James G. WATTERS, et al., Appellants,

v.

BUCKBEE MEARS CO., Respondent,

Tousley Development Corp., Respondent,

City of White Bear Lake, Defendant,

Jean T. Goins, Respondent.

No. C5-84-584.

Court of Appeals of Minnesota.

Sept. 18, 1984.

Edward T. Donohue, Robert J. Patient, St. Paul, for appellants.

Jeff M. Zalasky, Minneapolis, for respondent Buckbee Mears Co.

Thomas M. Conlin, Michael J. Dwyer, Michael S. Ryan, St. Paul, for respondent Tousley Development Corp.

Randall Sayers, St. Paul, for respondent Jean T. Goins.

Heard, considered and decided by LANSING, P.J., and WOZNIAK and FORSBERG, JJ.

## OPINION

LANSING, Judge.

James and David Watters were injured while driving on land used in the past by one of the respondents for mining gravel. They appeal from summary judgment dismissing their claim, contending the trial court erred in finding that (1) respondents had no duty to warn them about dangerous conditions on the property, and (2) the recreational use statute, Minn.Stat. § 87.-025–.03 (1982), barred their recovery. We affirm in part and reverse in part.

## FACTS

In the early morning hours of May 9, 1981, James and David Watters were proceeding north on Highway 61 in White Bear Lake as passengers in a Chevrolet Blazer driven by Tony Vecchiollo. The brothers were 21 and 19 years old, respectively. Each of them had consumed between three and five beers.

As they approached the intersection of Buerkle Road, the brothers suggested four-wheeling (off-road driving on an unpaved surface) on adjacent property owned by respondents. Tousley Development Corp. (Tousley) had mined gravel on this property and, as a result, the site contained excavation holes and large dirt hills.

Appellants entered the property by traversing a set of railroad tracks on Buerkle Road. The road appeared to extend past the tracks and onto the property, which was not fenced. There were no signs prohibiting trespassing or warning of dangerous conditions. After passing several smaller hills on a series of dirt trails, they decided to drive up one "a good 30 feet" tall with an upward slope of about 45 degrees. The decision was a joint one. When they reached the top, the car went over a vertical drop of four to five feet and rolled over twice as it went down the remaining 20 to 25 feet of the hill. James severly injured his back and right leg; David dislocated his right shoulder.

James had four-wheeled once on the site three to four months before the accident, as a passenger in a cousin's van. David had been there a number of times about five years before on a motorcycle for the same purpose. The driver had never been there before.

The defendants each conceded for purposes of the summary judgment motion that the accident occurred on their property. Tousley and Goins admitted in their memoranda to knowing the land was frequently used for off-road driving.

## ISSUES

1. Did the trial court err in granting summary judgment on the ground that respondents had no duty to warn appellants about dangerous conditions on the property?

2. Did the trial court err in granting summary judgment on the ground that the action was barred by Minn.Stat. § 87.-025–.03 (1982)?

## ANALYSIS

### I

Minnesota, along with most other states, continues to distinguish between duties owed to trespassers and duties owed to other entrants on land. In *Peterson v. Balach*, 294 Minn. 161, 199 N.W.2d 639 (1972), the court abolished the traditional distinctions governing licensees and invitees but declined to rule on the landowner's duty to trespassers. The court did say:

> [T]he considerations governing a landowner's or occupant's liability to trespassers may be fundamentally different from his duty to those whom he has expressly or by implication invited onto his property. Burglars are trespassers; vandals are trespassers. * * * Sweeping away all distinction between trespassers and social guests and business invitees is a drastic step to take because there may be, and often is, good reason to distinguish between a trespasser and a social guest. There is little or no reason to distinguish between a social guest and a business invitee.

*Id.* at 164–65, 199 N.W.2d at 642.

Appellants admit they were trespassers. A land possessor's duty to known trespassers is addressed in § 335 of the *Restatement (Second) of Torts* (1965). This standard was adopted by the Minnesota Supreme Court in *Hanson v. Bailey*, 249 Minn. 495, 499–500, 83 N.W.2d 252, 257 (1957). Section 335 provides as follows:

> A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area of the land, is subject to liability for bodily harm caused to them by an artificial condition on the land, if
> (a) the condition
> (i) is one which the possessor has created or maintains and
> (ii) is, to his knowledge, likely to cause death or serious bodily harm to such trespassers and
> (iii) is of such a nature that he has reason to believe that such trespassers will not discover it, and

> (b) the possessor has failed to exercise reasonable care to warn such trespassers of the condition and the risk involved.

*Restatement (Second) of Torts* § 335 (1965).

The trial court concluded that respondents had no duty to warn appellants because they had no reason to expect that trespassers would not discover the condition and that appellants were aware or should have been aware of the condition of the property and the risk involved in entering it. *See id.;* 4 *Minnesota Practice: Minnesota Jury Instruction Guides: Civil* [JIG II] 326 (J. Hetland & O. Adamson 2d ed. 1974) (there is no duty if the trespasser is already aware or should be aware of the condition of the premises and the risk involved). Appellants argue that they were not aware of the exact risk they encountered (the vertical drop on that particular hill) and that they actually expected the hill to flatten out.

The cases interpreting the trespasser rule in Minnesota do not focus on definition of obvious dangers that will abrogate the land possessor's duty. In *Hanson v. Bailey*, the court upheld a jury verdict in favor of passengers who rode through a construction zone at night and hit a pile of blacktop spread across a public highway. *Id.* at 503–05, 83 N.W.2d at 259–60.

In *Hughes v. Quarve & Anderson Co.*, 338 N.W.2d 422 (Minn.1983), the court applied § 339 of the *Restatement*, which involves a more liberal balancing test, because the plaintiff-trespasser was a minor. In upholding a jury verdict for the plaintiff, the court emphasized that there was a dangerous hidden condition present (the depth of a pond fluctuated because of quarrying activity). *Id.* at 426.

Other states have generally restricted the owner's duty to trespassers under § 335 to concealed dangers. In *Carlson v. Tucson Racquet and Swim Club, Inc.*, 127 Ariz. 247, 619 P.2d 756 (Ariz.Ct.App.1980), a 16-year-old boy entered the club's premises without permission, dove into a pool, and

sustained a permanent and paralyzing spinal cord injury. The court held as a matter of law, based on the common law duty not to willfully or intentionally injure a trespasser, that the club was not liable. The court noted that § 335 did not apply because the pool was not a condition that trespassers are not likely to discover. *Id.* at 249 n. 2, 619 P.2d at 758 n. 2.

In *Phipps v. Mitze*, 116 Colo. 288, 180 P.2d 233 (1947), a nine-year-old trespasser drowned in an artificial pond when he waded off an underwater ledge and fell into deep water. The court said that because the danger was apparent, rather than latent, and because the minor knew of and had been warned of the danger, the owner was not liable. *Id.* at 292, 180 P.2d at 235.

In *Bovino v. Metropolitan Dade County*, 378 So.2d 50 (Fla.Dist.Ct.App.1979), the county owned land used by trespassers for motorcycle races. The plaintiff rode his motorcycle there for two hours, then was struck by another motorcyclist. The court said the county was not liable because there was no defective condition on the property itself, but it also stated that there is no duty to warn a trespasser of a dangerous condition if he already knows about the condition. *Id.* at 51.

Finally, in *Alston v. Baltimore & Ohio Railroad Co.*, 433 F.Supp. 553 (D.D.C. 1977), the plaintiff sued for injuries sustained while trying to hop off a moving railroad car. In granting a JNOV for the defendant, the court said:

> [T]here is simply no basis under either common law or statute for requiring a landowner to meet a subjective standard of "reasonableness" toward a person who unlawfully enters onto his premises with the avowed intention of knowingly and deliberately exposing himself to an unconcealed, obviously dangerous hazard thereon.

*Id.* at 568; *see also Champlin v. Walker*, 249 N.W.2d 839, 842 (Iowa 1977) (trial court's grant of JNOV affirmed because maintenance of an open trench on residential property concealed only by darkness is not wanton conduct).

■ We agree with the trial court's determination in this case that the danger was not concealed and that both appellants were aware of the condition and the risk.

First, the property (about one-half mile by one-quarter mile) was composed entirely of dirt hills and ledges linked by trails. The hill which appellants decided to drive up was not markedly different from the others. An inspection, however brief, would have revealed the ledge on the other side. The danger was not concealed.

Second, both appellants had undeniably been four-wheeling on the property in the past. Both admitted to being familiar with the general terrain and to knowing their activity was potentially dangerous. James argues strongly that the trial court imputed David's superior knowledge of the terrain to him; however, based on his admitted knowledge, James should have known that off-road night driving on this terrain was inherently dangerous. There is no genuine issue of material fact to preclude summary judgment. *See e.g. Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979).

Although the trial court drew some unnecessary inferences against appellants (that they were seeking exactly this type of thrill and that they had agreed not to inspect the other side of the hill), those inferences are not necessary to sustain the judgment.

## II

An alternative basis for the trial court's order is that Minn.Stat. § 87.021–.03 (1982), the recreational use statute, precludes recovery. Briefly, the statute provides that an owner who directly or indirectly offers land for public use without charge is not liable to any person who uses the property. Section 87.025, however, preserves a trespasser's common-law rights against landowners:

Except as provided in this chapter nothing herein limits in any way any liability which otherwise exists:

(a) For conduct which, at law, entitles a trespasser to maintain an action and obtain relief for the conduct complained of * * *.

The Minnesota Supreme Court has found the recreational use statute inapplicable when the land is not offered for public use. In *Hughes v. Quarve & Anderson,* the quarry owner had generally tolerated swimmers, motorbikers, and socializers on the land. There was no fence around the property to keep people out. The court said in that case:

> [T]he Recreational Use Statute has no application where the defendant landowner does not offer the quarry pond in question for public use and, indeed, claims here that it has discouraged the public from using the pond as a public facility. In any event, section 87.025(a) expressly precludes any limitation on the liability of a landowner for conduct which, at law, entitles a trespasser to maintain an action and obtain relief, as in the case at bar.

338 N.W.2d at 427.

■ Tousley admitted during oral argument that the recreational use statute did not bar this action. There is no evidence in the record that the other respondents offered the land for public use. They argue, in fact, that appellants were trespassers. Because they did not directly or indirectly invite or permit people to use the property for recreational purposes, the statute does not apply. *See id.;* Minn.Stat. § 87.023 (1982).

### DECISION

The trial court did not err in granting summary judgment for respondents on the ground that they had no duty to warn appellants about dangerous conditions on their property. It was error, however, to grant summary judgment on the basis of the recreational use statute.

Affirmed in part, reversed in part.