Michelle SIREK, a minor, by Mabel
BEAUMASTER, Guardian ad
Litem, Respondents,

v.

STATE of Minnesota, DEPARTMENT
OF NATURAL RESOURCES,
Petitioner, Appellant,

and

Douglas SCHUTTA, Defendant
and Third-Party Plaintiff,
Respondent,

v.

Emmett SIREK, et al., Third-Party
Defendants, Respondents.

No. C5-91-2063.

Supreme Court of Minnesota.

March 5, 1993.

Hubert H. Humphrey, III, Atty. Gen., Mary Ann Bernard, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Sally S. Spector, Mitchell R. Spector, Abrams & Spector, P.A., Minneapolis, for Michelle Sirek, et al.

Gene P. Bradt, Hansen, Dordell, Bradt, Odlaug & Bradt, St. Paul, for Douglas Schutta.

William L. Lubov, Minneapolis, for Emmett Sirek, et al.

KEITH, Chief Justice.

On June 26, 1988, six-year-old Michelle Sirek and her family visited Interstate State Park ("Park"). After swimming and a picnic, they decided to hike the park's mile-long Curtain Falls Trail ("Trail"). State Highway 8 divides the parking lot and picnic area, to the east, from the start of the Trail, on the west. A pedestrian culvert running under Highway 8 provided a passage from the parking lot to the start of the Trail. The Trail did not return pedestrians to the culvert but instead ended at a point directly across Highway 8 from the parking lot and nearly 500 feet from the culvert.

When the Sireks reached the end of the Trail at around 5:00 that afternoon, they faced Highway 8, which was congested with heavy traffic. The Sireks waited approximately 15 minutes to cross the highway. When their ten-year-old son grew tired of waiting, his parents allowed him to walk back on the Trail alone.[1] While waiting for traffic to clear, Mr. Sirek held Michelle's hand "off and on" but dropped her hand when he stepped out to look for traffic. At this point, traffic approaching from the left was clearly visible, and while the sight distance to the right was substantial, it was not optimal.[2]

As he looked to his right, Mr. Sirek remembers seeing the van which ultimately hit Michelle before he looked back to the left to wait for another car to pass. The van driver, Douglas Schutta, also indicated that he saw the Sireks before Michelle ran onto the highway. However, Michelle stated that she did not see any cars and, upon seeing none, attempted to cross the high-

---

1. While the Sireks assert that the Trail configuration led them to a point at which they were forced to cross Highway 8, the Department of Natural Resources (DNR) emphasizes that they had other viable options available to them, including walking back on the trail (as their ten-year-old son actually did), walking 500 feet along the right shoulder of the highway and then down a ditch slope to the large culvert, or walking back to the culvert through a visible path in the ditch. This last alternative, walking through the ditch, was challenged as being unfeasible because an examination of the ditch two years later, in May and June of 1990, revealed that the ditch contained "underbrush and intermittent areas of water and mud." However, the precise condition of this path at the time of the accident is unknown.

2. Traffic approaching from the right came around a curve some distance away. The sight distance to the curve was deemed "tolerable, but a long way from desirable" by a traffic engineering consultant and was considered "not in conformance with the standards in the Minnesota DNR manual." However, Mr. Sirek stated that he actually saw the van which hit Michelle before she ran out onto the road.

way. Neither parent saw her until she had crossed one lane of traffic and was in front of the van, which hit her with its left front fender. The van was traveling at least 35 miles per hour, and the impact caused Michelle to suffer substantial brain damage and other bodily injuries.

Prior to this accident, no known pedestrian accidents occurred at the Trail in its 60–year existence. However, after the accident, the Trail was reconfigured to loop back to the culvert to allow hikers to pass safely under Highway 8 at both the beginning and end of the Trail.[3]

In response to the accident, Michelle Sirek's guardian ad litem commenced suit against the driver of the vehicle and the Department of Natural Resources (DNR). The DNR moved for summary judgment, asserting that it was immune from liability pursuant to Minn.Stat. § 3.736, subd. 3(h) (1992). The trial court denied this motion, finding material fact questions regarding the DNR's breach of the statutory duty of care under either the child trespasser standard of *Restatement (Second) of Torts* § 339 (1965), or the adult standard of *Restatement (Second) of Torts* § 335 (1965). The DNR appealed the denial of summary judgment as of right under *McGovern v. City of Minneapolis*, 475 N.W.2d 71 (Minn. 1991). The court of appeals affirmed the trial court and held that the child trespasser standard of section 339 applies. *Sirek v. State, Dep't of Natural Resources*, 484 N.W.2d 817 (Minn.App.1992).

On appeal to this court, the issues are (1) whether a trespassing child accompanied by adults is owed the general standard of care owed to trespassers under section 335 or the somewhat higher standard owed to child trespassers under section 339, and (2) whether the DNR has sustained its burden of demonstrating that no genuine issues of fact exist and that it is entitled to summary judgment.

I.

■ In defining the general duty owed by state agencies to state park visitors, the Minnesota Tort Claims Act grants limited immunity by providing that the state, its agencies, and its employees are not liable for

a loss incurred by a user arising from the construction, operation, or maintenance of the outdoor recreation system * * * except that the state is liable for conduct that would entitle a trespasser to damages against a private person.

Minn.Stat. § 3.736, subd. 3(h) (1992). In *Green–Glo Turf Farms, Inc. v. State*, 347 N.W.2d 491, 494 (Minn.1984), this court held that the DNR and similar state agencies are immune from liability unless they fail to conform to the standard of conduct imposed under the law of trespass as defined in *Restatement (Second) of Torts* §§ 333–339. Thus, while this statute does not wholly absolve state agencies from liability, it enables them to treat visitors, in the tort context, as trespassers rather than licensees or invitees.

■ The rule of law in trespass cases contrasts sharply from the duty of reasonable care owed by most landowners. In a trespass case, the landowner generally owes no duty at all because "a possessor of land is not liable to trespassers for physical harm caused by his failure to exercise reasonable care to put the land in a condition reasonably safe for their reception, or to carry on his activities so as not to endanger them." *Restatement (Second) of Torts* § 333 (1965).

Although section 3.736, subd. 3(h), makes it clear that the DNR would be liable for damages only if a trespasser could recover damages from a private person, Minnesota courts have not definitively determined whether trespassing children accompanied

---

3. This change cost less than $10,000 and took approximately six weeks to complete. The Sireks assert that the DNR violated its own *Trails Manual* guidelines with respect to employing a "loop design" on all trails. In fact, these guidelines apply only to future trail development, not to existing trails such as this one, which was built in the 1930s.

by adults in state parks can avail themselves of the heightened standard owed to "child trespassers" under section 339 of the *Restatement* or whether they are instead limited to the general trespasser standards of section 335.

Section 335, the general provision on the duty owed to trespassers, establishes a limited standard of care. Specifically, this section provides:

A possessor of land who knows, or from facts within his knowledge should know, that trespassers constantly intrude upon a limited area of the land, is subject to liability for bodily harm caused to them by an artificial condition on the land, if

(a) the condition

(i) is one which the possessor has created or maintains and

(ii) is, to his knowledge, likely to cause death or seriously [sic] bodily harm to such trespassers and

(iii) is of such a nature that he has reason to believe that such trespassers will not discover it, and

(b) the possessor has failed to exercise reasonable care to warn such trespassers of the condition and the risk involved.

*Restatement (Second) of Torts* § 335 (1965); *see Hanson v. Bailey*, 249 Minn. 495, 500, 83 N.W.2d 252, 257–58 (1957). Under this standard, a landowner will be liable only for failing to exercise reasonable care to warn trespassers about hidden, artificial dangers created or maintained by the landowner. *Hughes v. Quarve & Anderson Co.*, 338 N.W.2d 422, 426 (Minn. 1983). The landowner has no duty to eliminate these conditions from the land in order to accommodate trespassers but only to give them adequate warning. *Green–Glo*, 347 N.W.2d at 494. In so doing, however, a landowner is "entitled to assume trespassers will realize that no preparation has been made for their reception and will, therefore, be on the alert to observe the conditions which exist upon the land." *Restatement (Second) of Torts* § 335 cmt. f (1965).

In contrast, section 339 imposes a heightened standard of care on landowners with respect to child trespassers. Under this section, a claimant must establish the following elements:

A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

*Restatement (Second) of Torts* § 339 (1965); *see Gimmestad v. Rose Bros. Co.*, 194 Minn. 531, 261 N.W. 194 (1935). Section 339 thus places a significantly higher burden on landowners. In some cases, it actually imposes a duty on landowners to reconfigure their land, rather than simply to warn children. *Restatement (Second) of Torts* § 339 cmts. n & o (1965). Section 339 only applies, however, where children are "likely to trespass." *Restatement (Second) of Torts* § 339(a) (1965).

In applying these provisions to the present dispute, the DNR notes that the assistant park manager had never seen children walking the Trail unaccompanied by an adult, in part due to the Trail's isolated

location[4] and the hazards found along the Trail.[5] As the assistant park manager stated in a sworn affidavit, children are unlikely to be present on the Trail without adult supervision, a fact that differentiates this case from most child trespasser cases, which involve "wandering" children. In addition, section 339, by its terms, does not apply to dangers which "may reasonably be expected to be understood and appreciated by any child of an age to be allowed at large." *Restatement (Second) of Torts* § 339 cmt. j (1965). Thus, section 339 is inapplicable.

■ Respondent Sirek asserts that the presence or absence of parents has not affected this court's analysis of a landowner's duty to trespassing children. However, these previous cases did not involve child trespassers but rather child invitees or licensees who wandered away from their parents in business places where their *unsupervised* presence could reasonably be anticipated. *See, e.g., Peterson v. Richfield Plaza, Inc.,* 252 Minn. 215, 89 N.W.2d 712 (1958) (imposing liability on a store owner when a child fell off a balcony because the owner knew that children often were in the area and sometimes wandered away from their parents). In this case, all users of Minnesota's outdoor recreation facilities are deemed "trespassers" by operation of Minn.Stat. § 3.736, subd. 3(h) (1992), thereby making these child invitee or licensee cases inapplicable to the present dispute.

In addition, the cases cited by respondent for the proposition that a parent's negligence may not be imputed to a child are distinguishable from the present case. *See McCormack v. Hankscraft Co.,* 278 Minn. 322, 341, 154 N.W.2d 488, 501 (1967); *Brennan v. Minnesota, D. & W. Ry. Co.,* 130 Minn. 314, 316, 153 N.W. 611, 612 (1915). In those cases, the question was whether a parent's contributory negligence could bar a child's recovery. Here, the issue is not one of contributory negligence, but rather involves the question of whether the DNR owes any *duty* at all. In holding that the DNR owes no such duty, we agree with Illinois courts which have recognized that "[w]hen small children are being watched by their parents, or entrusted persons in supervision, landowners may be relieved of a duty to warn them of or remove dangerous instrumentality [sic] the danger from which is apparent," *Strode v. Becker,* 206 Ill.App.3d 398, 151 Ill.Dec. 420, 425, 564 N.E.2d 875, 880 (1990), and have stated that "if a child is too young chronologically or mentally to be 'at large,' the duty to supervise that child as to obvious risks lies primarily with the accompanying parent." *Salinas v. Chicago Park Dist.,* 189 Ill.App.3d 55, 136 Ill.Dec. 660, 664, 545 N.E.2d 184, 188 (1989).

Imposing a tort duty on the DNR in this case would undermine the purposes behind the Outdoor Recreation Act, *see* Minn.Stat. ch. 86A (1992), and would effectively swallow the immunity envisioned by Minn.Stat. § 3.736, subd. 3(h) (1992). Because children accompanied by adults are omnipresent in state parks, imposing liability for any ensuing injury would subject entities such as the DNR to practically unlimited liability and would require the "childproofing" of vast areas of state parks, which would violate the spirit underlying the preservation of "Minnesota's natural and historical heritage for public understanding and enjoyment." Minn.Stat. § 86A.02, subd. 3(1) (1992).

Thus, for the above stated reasons, we reverse the court of appeals and hold that the general trespasser standards of section 335, rather than the child trespasser standards of section 339, should be applied in this case.

---

4. Because the Park is along a state highway, it is generally accessed by car, which effectively precludes children from using the Trail without adult supervision.

5. The Trail has many hazards, including woods, a river, and unfenced cliffs. This makes the Trail unsuitable for unsupervised children.

## II.

Having determined that section 335 applies to the underlying conduct in this case, we still must decide whether there are any genuine issues of material fact precluding summary judgment. *Betlach v. Wayzata Condominium,* 281 N.W.2d 328, 330 (Minn.1979). In determining whether or not material facts exist, this court must view the evidence in the light most favorable to the non-moving party. *See, e.g., Grondahl v. Bulluck,* 318 N.W.2d 240, 242 (Minn.1982).

Under section 335, a landowner does not have a duty to eliminate artificial conditions from the land but merely must "exercise reasonable care to warn such trespasser of the condition and the risk involved." *Restatement (Second) of Torts* § 335(b) (1965). In addition, a claimant must establish that the artificial condition on the land "is of such a nature that [the possessor of land] has reason to believe that such trespassers will not discover it." *Id.* § 335(a)(iii). Usually, recovery will be permitted only where there the condition is "hidden" or otherwise non-obvious. *See Hughes,* 338 N.W.2d at 426.

 In this case, there is no evidence that the Sireks failed to discover the highway, which in this case was the "artificial condition." To the contrary, the highway was visible 100 feet before the Trail ended, and, in fact, the Sireks actually waited approximately 10 to 15 minutes at the edge of the highway for traffic to clear.

Furthermore, a brief inspection would have revealed the danger, even to Michelle. Mr. Sirek stated that he saw the van which ultimately hit Michelle and then looked back to the left to check for other cars. Similarly, the van driver, Mr. Schutta, saw the entire Sirek family on the side of the road before Michelle ran out.

As "trespassers," the Sireks were required to be alert to conditions existing upon the land, *Restatement (Second) of Torts* § 335 cmt. f (1965), and although there are situations in which trespassers, although required to be alert, cannot antici-

pate the dangers or hidden "traps" that await them, *see, e.g., Davies v. Land O'Lakes Racing Ass'n,* 244 Minn. 248, 256, 69 N.W.2d 642, 647 (1955), this is not such a case. Here, nothing was hidden from the Sireks, and although the sight distances may have been less than optimal, the Sireks actually saw the Schutta van before Michelle ran out into the road. Thus, given the absence of any "traps" or other hidden dangers, we hold that the DNR is entitled to judgment as a matter of law.

Reversed.

PAGE, J., took no part in the consideration or decision in this case.