Timothy ZACHARIAS, individually, and Trustee for the Heirs of Corey James Zacharias, decedent, Appellant (CX–93–622) Respondent (C3–93–722),

v.

MINNESOTA DEPARTMENT OF NATURAL RESOURCES, et al., Respondents,

Carol Neuenfeldt, Respondent (CX–93–622) Appellant (C3–93–722).

Nos. CX–93–622, C3–93–722.

Court of Appeals of Minnesota.

Sept. 21, 1993.

Review Denied Nov. 16, 1993.

Paul J. Phelps, Lyons Sawicki Neese, P.A., St. Paul, for appellant (CX–93–622) and Respondent (C3–93–722).

Hubert H. Humphrey, III, Atty. Gen., Jerome L. Getz, Asst. Atty. Gen., St. Paul, for respondents.

James R. Olson, Joel Dahlgren, Berens, Rodenberg & O'Connor, New Ulm, for respondent (CX–93–622) and appellant (C3–93–722).

Considered and decided by HUSPENI, P.J., and KLAPHAKE and FLEMING\*, JJ.

## OPINION

HUSPENI, Judge.

Appellants challenge the district court's award of summary judgment and dismissal, based on outdoor recreational immunity under Minn.Stat. § 3.736, subd. 3(h) (1990), of a wrongful death action against the state and two of its employees. We affirm.

## FACTS

At approximately 9:00 a.m. on August 11, 1990, seven-year-old Corey Zacharias, while camping at Flandrau State Park with his grandmother, Carol Neuenfeldt,[1] his eight-year-old cousin, Aaron Neuenfeldt, and Charlotte Lindquist, a friend of Carol Neuenfeldt, went to the beach at the park's swimming pond. Corey's parents were not camping with them and entrusted Neuenfeldt with supervising the children during the camping trip.

The swimming pond at Flandrau State Park was constructed originally in the 1960s along the Cottonwood River but was closed in 1983. The pond was reconstructed in 1987 because the existing pond lacked a filtration and chlorination system and had high bacterial counts. The reconstruction involved reshaping the cavity in the ground, lining the bottom with polyvinyl chloride sheeting, covering the sheeting with sand, and installing a filtration and chlorination system. Buoys and ropes were installed to separate the pond's shallow areas from the deepest area where the pond's filtration system was located. The buoys contained no depth markers. The pond gradually inclines from shore to a maximum depth of six feet in the middle.

Neuenfeldt remained on shore and watched the boys get into the water. She told the boys the location of the deep water and said "don't go near there." She did not explain that the water would be over their heads. Neuenfeldt knew that despite taking swimming lessons, Corey could not swim and was afraid of deep water.

Neuenfeldt did not "watch [Corey and Aaron] real close" and talked with various people while the boys swam. Neuenfeldt conversed with respondent Brenda Olson (Olson), an employee of respondent Minnesota Department of Natural Resources (DNR), whom Neuenfeldt had known from her home town. Olson was helping another employee, respondent Kim Bowar (Bowar), perform mainte-

\* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn.Const. art. VI, § 10.

1. Timothy Zacharias, individually and as trustee for the heirs of Corey Zacharias, plaintiff below, and Carol Neuenfeldt, defendant below, separately appealed from the summary judgment order dismissing Zacharias' wrongful death complaint and Neuenfeldt's cross-claim. As a result, when the appeals were consolidated, these parties had both appellant and respondent designations. For purposes of clarity in this opinion, Zacharias and Neuenfeldt will be referred to individually by their surnames or collectively as appellants where appropriate. Decedent and his cousin, Aaron Neuenfeldt, are referred to by their first names.

nance work in the pond area when she recognized Neuenfeldt and spoke with her.

Olson was not trained as a lifeguard and was not responsible for supervising the pond area or swimmers. Neuenfeldt, who did not know how to swim, asked Olson whether a lifeguard was on duty. Olson explained that no lifeguard was on duty until Bowar had finished cleaning skimmers, performing chlorination tests and other pond maintenance functions. According to Bowar, while doing pond maintenance her back was often toward the pond and she could not perform maintenance and watch swimmers simultaneously. Bowar did not watch swimmers while doing maintenance duties to avoid giving the mistaken impression she was lifeguarding.

During Neuenfeldt's conversation with Olson, Olson allegedly told her that a lifeguard came on duty at 10:00 a.m. Neuenfeldt assumed Bowar, who was cleaning skimmers at approximately 10:00 a.m., was on duty. The DNR, however, did not have established lifeguard hours. Lifeguards went on duty after morning maintenance had been completed. When the lifeguard went on duty, the lifeguard was to change the "Lifeguard Off Duty" to the "Lifeguard On Duty" sign. The parties dispute whether a sign had been posted.

At 10:10 a.m., Neuenfeldt realized she could not see Corey after Aaron came to her alone. Olson told Neuenfeldt that perhaps she should have Aaron call Corey in from the pond. Neuenfeldt looked for Corey around the swimming pond and in the campground but did not initiate a search of the pond or inform Bowar that Corey was missing. A swimmer discovered Corey's body under the water. Bowar, who was still performing maintenance functions and who was not yet on duty, performed cardiopulmonary resuscitation but could not revive Corey.

Zacharias sued the DNR for negligent maintenance of an artificially created swimming pond at the park and for negligent failure to properly provide warning signs and maintain water clarity. He also sued Bowar and Olson for negligent lifeguarding and neg-

ligent supervision, and sued Neuenfeldt and Lindquist[2] for negligent supervision at the time of Corey's death. Neuenfeldt cross-claimed against all respondents for negligent supervision, maintenance, and design. The district court granted summary judgment for respondents dismissing, on the basis of outdoor recreational immunity under Minn.Stat. § 3.736, subd. 3(h) (1990), both Zacharias' complaint and Neuenfeldt's cross-claim.

## ISSUES

1. Did the district court err in determining the state and its employees were immune from liability under Minn.Stat. § 3.736, subd. 3(h) (1990)?

2. Did the district court err in holding that appellants had the burden of proving the existence of the elements of the Restatement (Second) of Torts standard for trespassers?

3. Does Minn.Stat. § 3.736, subd. 3(h) provide immunity for state employees' allegedly negligent acts?

## ANALYSIS

■ This court, when reviewing a summary judgment order, must determine whether any genuine issues of material fact exist and whether the trial court erred in its application of the law. Minn.R.Civ.P. 56.03; *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). However, we need not defer to the trial court's decision regarding a legal issue. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn. 1984). The nonmoving party has the benefit of the view of the evidence most favorable to him. *Grondahl v. Bulluck*, 318 N.W.2d 240, 242 (Minn.1982).

### I.

■ Appellants argue that the district court erred in determining that respondents were immune from liability under Minn.Stat. § 3.736, subd. 3(h) (1990). We disagree. The state is liable for losses caused by an act

---

**2.** Pursuant to stipulation of all parties, Lindquist was subsequently dismissed with prejudice from the action.

or omission of a state employee acting within the scope of employment where the state, if a private person, would be liable to the claimant. Minn.Stat. § 3.736, subd. 1 (1990). The Minnesota Tort Claims Act, however, provides liability immunity to the state and its employees for

> a loss incurred by a *user* arising from the construction, operation, or maintenance of the *outdoor recreation system,* as defined in section 86A.04 * * * *except that the state is liable for conduct that would entitle a trespasser to damages against a private person.*

Minn.Stat. § 3.736, subd. 3(h) (emphasis added).

> The outdoor recreation system consists of all *natural state parks; recreational state parks;* state trails * * *; state scientific and natural areas; state wilderness areas; state forests; * * * state historic sites; and state rest areas, which include all facilities established by the commissioner of transportation for the safety, rest, comfort and use of the highway traveler.

Minn.Stat. § 86A.04 (1990) (emphasis added). As noted by the district court, "it is undisputed by the parties that Flandrau State Park falls within the definition of the outdoor recreation system."

■ Zacharias argues, however, that the immunity granted under section 86A.04 cannot extend to an artificially created condition such as the swimming pond in which Corey drowned.[3] We disagree, and conclude that an artificially created swimming pond also falls within the definition of the outdoor recreation system. To conclude otherwise would lead to the absurd result that in defining the outdoor recreation system the legislature intended to include all natural and recreational state parks, but to selectively remove certain parts of the system because they were artificially created.

In addition, Flandrau State Park, as a "recreational state park" as defined in Minn. Stat. § 86A.05, subd. 3 (1990), is required to "provide a broad selection of outdoor recreation opportunities in a natural setting." Minn.Stat. § 86A.05, subd. 3(a). In fact, under Minn.Stat. § 86A.05, subd. 3(b):

> No unit shall be authorized as a recreational state park unless its proposed location substantially satisfies the following criteria: (1) Contains natural or artificial resources which provide outstanding outdoor recreational opportunities that will attract visitors from beyond the local area.

Case law also supports a determination that an artificially created condition may remain within the immunity protection afforded by the statute. *See, e.g., Sirek by Beaumaster v. State, Dep't of Natural Resources,* 496 N.W.2d 807, 811 (Minn.1993) (state immune for injuries to six-year-old girl who ran in front of car while crossing a trunk highway within a state park); *Cobb v. State, Dep't of Natural Resources,* 441 N.W.2d 839, 841 (Minn.App.1989) (no liability for injury on a dock where there was no evidence of a concealed danger likely to cause death or serious bodily harm); *Lee v. State, Dep't of Natural Resources,* 478 N.W.2d 237, 239 (Minn.App. 1991) (no liability where unsupervised four-year-old fell from unfenced fishing pier in a city park, on the ground that the risk posed by water is obvious to any child old enough to be unsupervised), *pet. for rev. denied* (Minn. Feb. 10, 1992); and *Johnson v. State,* 478 N.W.2d 769, 773 (Minn.App.1991) (no liability for raised sidewalk joint, on the ground that it was not likely to cause death or serious bodily harm and was not a concealed danger), *pet. for rev. denied* (Minn. Feb. 27, 1992).

■ Zacharias also contends that swimming in an artificially created swimming pond is not "outdoor recreation,"[4] and there-

---

3. In *Johnson v. Washington County,* —— N.W.2d —— (Minn.App. August 31, 1993) this court ruled that "the Lake Elmo Preserve pond is not an artificial condition that precludes giving the County tort immunity." The state here does not challenge the district court's conclusion that the Flandrau State Park swimming pond is an artificial condition. Therefore, we accept the district

court's determination and do not address the validity of the district court's categorization.

4. Outdoor recreation is defined as
   any voluntary activity, including hunting, fishing, trapping, boating, hiking, camping, and engaging in winter sports, which is *conducted primarily for the purposes of pleasure, rest, or*

fore the immunity afforded by statute is not available. Again, we disagree. Whether swimming in an artificially created pond in a state park is an "outdoor recreation" under Minn.Stat. § 86A.03, subd. 3 (1990) is not relevant to determining immunity under the Minnesota Tort Claims Act. Immunity applies to losses of a "user," such as Corey, arising from construction, operation, or maintenance of the outdoor recreation system. Minn.Stat. § 3.736, subd. 3(h). Immunity does not depend upon a demonstration that the user was engaging in "outdoor recreation" when injured.

Zacharias next argues that:

> [I]f the legislature had intended immunity for an artificially created swimming pond at a state park it would have presumably done so when it enacted immunity for * * *, municipalities, counties and school districts [under] Minn.Stat. § 466.03, subd. 6(e) and subd. 6(f) concerning beach or pool equipment.[5]

We disagree. Although section 466.03, subd. 6(e) is similar to Minn.Stat. § 3.736, subd. 3(h) and the State Tort Claims Act does not contain an analogous provision to municipal immunity for beach or pool equipment in the Municipal Tort Claims Act, we do not believe the legislature thereby intended to exclude from immunity an artificially created swimming pond located in a state park. Instead, we believe the legislature recognized that municipalities, unlike state parks, operate beaches and swimming areas that are separate from other park or recreation areas, and reflected that recognition by appropriately including more specific references in the statutes dealing with municipal immunity.

Because the swimming pond at Flandrau State Park was part of the outdoor recreation system and Corey was a user, respondents are entitled to immunity unless the state and its employees engaged in "conduct that would entitle a trespasser to damages against a private person." Minn.Stat. § 3.736, subd. 3(h); *Green–Glo Turf Farms, Inc. v. State,* 347 N.W.2d 491, 494 (Minn. 1984) (state is immune from liability unless it fails to conform to the standard of conduct imposed under Restatement (Second) of Torts §§ 333–339).[6]

■ The district court determined that application of either Restatement (Second) of Torts (1965), section 335 (general trespasser)[7] or section 339 (child trespasser),[8] result-

---

5. relaxation and is dependent upon or derives its *principal benefit from natural surroundings.* Minn.Stat. § 86A.03, subd. 3 (1990) (emphasis added). It is doubtful that the legislature intended this to be an exhaustive list of recreation that could occur outdoors. Swimming in a naturally created pond, lake, or river is not mentioned, though it would be absurd to conclude that such activity fell outside the statutory scope. Swimming in either a natural or an artificially created pond in a state park derives its benefit from the location within the state park.

5. Subdivision 6f of the Municipal Tort Claims Act provides immunity for "injury arising out of the use by any person of a diving board, diving platform, diving raft, water slide, * * * or dock installed at a beach or swimming pool owned, leased, or operated by a municipality." Minn. Stat. § 466.03, subd. 6f (Supp.1991). Subdivision 6e addresses immunity for injuries based upon "construction, operation, or maintenance of any property [of] the municipality * * * used as a park [or] as an open area for recreational purposes." Minn.Stat. § 466.03, subd. 6e (1990).

6. The trespasser provisions of the Restatement apply only to artificial conditions. As noted in footnote 3, the state does not challenge the district court's determination that the Flandrau swimming pond is an artificial condition.

7. Section 335 provides a private person is liable for bodily harm to trespassers caused by artificial conditions if

> (a) the condition
> (i) is one which the possessor has created or maintains, and '
> (ii) is, to his knowledge, likely to cause death or serious bodily harm to such trespassers, and
> (iii) is of such a nature that he has reason to believe that such trespassers will not discover it, and
> (b) the possessor has failed to exercise reasonable care to warn such trespassers of the condition and the risk involved.

8. Section 339 provides that a private person is liable for harm to trespassing children caused by an artificial condition upon land if

> (a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and
> (b) the condition is one of which the possessor knows or has reason to know and which he

ed in immunity for respondents under Minn. Stat. § 3.736, subd. 3(h). The scope of respondents' legal duty is a question of law for the court to decide. *Larson v. Larson,* 373 N.W.2d 287, 289 (Minn.1985).

■ We conclude that under *Sirek,* released after the district court granted summary judgment here, section 335 applies in this case rather than the higher standard for child trespassers under section 339. In *Sirek,* a six-year-old child, who was supervised by her parents in a state park, was injured when a van struck her as she attempted to cross a highway. The family had hiked a trail in the park that did not end by returning to a pedestrian culvert under the highway, but instead ended across the highway from the parking lot. *Sirek,* 496 N.W.2d at 808–09.

The *Sirek* court applied the general trespasser standard set forth in Restatement section 335 because it determined that the duty to children, supervised by a parent or an entrusted adult, lies primarily with the accompanying adult. *Id.* at 810–11. The court noted the policy consideration behind its holding:

> Imposing a tort duty on the DNR in this case would undermine the purposes behind the Outdoor Recreation Act, *see* Minn.Stat. ch. 86A (1992), and would effectively swallow the immunity envisioned by Minn.Stat. § 3.736, subd. 3(h) (1992). *Because children accompanied by adults are omnipresent in state parks, imposing liability for any ensuing injury would subject entities such as the DNR to practically unlimited liability and would require the "childproofing" of vast areas of state parks, which would violate the spirit underlying the preservation of "Minnesota's natural and historical heritage for public understanding and enjoyment."* Minn.Stat. § 86A.02, subd. 3(1) (1992).

*Id.* at 811 (emphasis added). The *Sirek* court contrasted the situation of children in a state park with that of "wandering" children, which are typically involved in applying section 339. *Id.*

Appellants argue that *Sirek* is distinguishable because that case involved an area of the park where "children are unlikely to be present * * * without adult supervision," *id.* at 811, whereas children are sometimes found at the Flandrau State Park swimming pond without adult supervision. A close reading of *Sirek,* however, leads us to conclude that this case is indistinguishable from *Sirek.* Corey was present at Flandrau State Park with two adults, one of whom was with him at the time of his death. Even though children might be at the Flandrau swimming pond at times without adult supervision, to apply section 339 in this case would in effect require childproofing of the pond, and would result in a holding contrary to *Sirek.*

■ Application of section 335 to respondents' conduct reveals that there are no factual disputes to preclude summary judgment. *See Offerdahl,* 426 N.W.2d at 427. Language in *Sirek* is especially instructive in reaching this conclusion.

> [A] landowner will be liable only for failing to exercise reasonable care to warn trespassers about hidden, artificial dangers created or maintained by the landowner. The landowner has no duty to eliminate these conditions from the land in order to accommodate trespassers but only to give them adequate warning. In so doing, however, a landowner is "entitled to assume trespassers will realize that no preparation has been made for their reception and will, therefore, be on the alert to observe the conditions which exist upon the land."

*Sirek,* 496 N.W.2d at 810 (citations omitted).

It is uncontested that Corey and Aaron knew of the deep area and were told not to go near that area. The Flandrau swimming pond did not involve any hidden dangers.

realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children, and
(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and
(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

Respondents had no duty to warn and the district court properly determined that the respondents were entitled to judgment as a matter of law. *See id.* at 812.

## II.

■ Neuenfeldt argues that the district court inappropriately placed the burden of proof upon appellants to establish whether the elements of Restatement (Second) of Torts §§ 335 or 339 were met so as to defeat respondents' immunity. Neuenfeldt in effect asks whether a plaintiff, in proving all elements of its claim, must demonstrate liability of the state and its employees by showing a private person would be liable to plaintiff as a trespasser, or whether, because immunity is a defense, the state and its employees should bear the burden of establishing the appropriate Restatement (Second) of Torts standard for trespass.

Generally, proof of a traditional negligence claim does not depend upon establishing trespass liability under the Restatement. In order to hold respondent state and its employees liable, however, a showing that they would be liable to a trespasser as a private individual is required to rebut outdoor recreational immunity.

■ In *Cobb*, this court, in concluding outdoor recreational immunity applied because section 335 was not satisfied, stated "[e]ach of the[ ] requirements [of section 335] must be met before liability will attach." *Cobb*, 441 N.W.2d at 841. Likewise, in *Sirek by Beaumaster v. State, Dep't of Natural Resources*, 484 N.W.2d 817, 820 (Minn.App. 1992), *rev'd on other grounds* 496 N.W.2d 807 (Minn.1993), this court stated that "a plaintiff must establish the existence of every element of section 339 to establish a cause of action." Also, a party who stands to benefit from establishing an affirmative proposition of fact essential to a claim bears the burden of proof. *Chemlease WorldWide, Inc. v. Brace, Inc.*, 338 N.W.2d 428, 437 (Minn.1983). Thus, case law appears to indicate that a plaintiff, injured in the outdoor recreation system, who seeks recovery from the state or its employees must establish liability under the applicable Restatement provision as part of its cause of action.

■ To be entitled to summary judgment as a matter of law based on immunity under Minn.Stat. § 3.736, subd. 3(h), respondents would have the burden initially of claiming that appellants were unable to satisfy the appropriate trespasser section of Restatement (Second) of Torts. In seeking summary judgment based on immunity, respondents demonstrated that they had no duty to warn of drowning in the pond when the danger was not hidden or otherwise nonobvious. *See Sirek*, 496 N.W.2d at 812. Appellants then were required to establish the presence of a question of material fact on the issue of whether respondents' conduct was such as would cause a private person to be liable to a trespasser. Appellants failed to demonstrate the presence of an issue of material fact.

## III.

■ Zacharias argues that Minn.Stat. § 3.736, subd. 3 does not immunize Bowar and Olson from negligence because their actions were not based upon the "construction, operation or maintenance of the outdoor recreation system." Again, we disagree.

Section 3.736, subd. 3 provides that "the state and its employees" are not liable for a "loss incurred by a user arising from the construction, operation, or maintenance of the outdoor recreation system." Minn.Stat. § 3.736, subd. 3(h). While the causes of action against Olson and Bowar are based upon negligent supervision and negligent performance while on duty, these employees were operating and maintaining part of the outdoor recreation system at the time of their allegedly negligent acts. Bowar was cleaning skimmers and performing other maintenance functions at the time Corey drowned. Lifeguarding, similarly, is part of the "operations" of a state park containing swimming areas, and, therefore, Olson's activities also fall within the immunity provision.

Finally, Zacharias contends that if immunity is granted under the circumstances of this case, the state can decide to provide lifeguards, and yet evade responsibility should someone drown because of the negligence of

a lifeguard. We conclude that the legislature intended under Minn.Stat. § 3.736, subd. 3(h) to provide immunity that would include even such an occurrence.

In providing outdoor recreational immunity, the legislature weighed the policies behind the Outdoor Recreation Act, *see* Minn. Stat. § 86A.02, subd. 1 (1990) ("the unique natural * * * resources of Minnesota provide abundant opportunities for outdoor recreation * * * [and] should be made available to all citizens"), against the potential cost of compensating injuries that unfortunately and tragically may occur in the outdoor recreation system. The legislature balanced the policies in favor of "equity and good conscience" to find immunity. *See* Minn.Stat. § 3.736, subd. 3. Thus, although Bowar and Olson may have had a duty and may have breached that duty, the legislature intended to immunize respondents from liability in all cases except those involving actions for which a private person would be liable to a trespasser. *See id.,* subd. 3(h).

## DECISION

The district court properly granted summary judgment and dismissed appellants' complaint and cross-claim and correctly determined that the DNR and its employees were immune from outdoor recreational liability under Minn.Stat. § 3.736, subd. 3(h).

**Affirmed.**