Janet A. LISHINSKI and Gary H. Lishinski, individually and as Trustees for the heirs and next-of-kin of Jessica A. Lishinski, Respondents,

v.

CITY OF DULUTH, Appellant.

No. CX–01–747.

Court of Appeals of Minnesota.

Oct. 16, 2001.

H. Jeffrey Peterson, Alicia L. Cope, Virginia, MN, for respondents.

Bryan F. Brown, City Attorney, M. Alison Lutterman, Deputy City Attorney, Cynthia Albright, Assistant City Attorney, Duluth, MN, for appellant.

Considered and decided by PETERSON, Presiding Judge, AMUNDSON and ANDERSON, Judges.

## OPINION

G. BARRY ANDERSON, Judge

Appellant City of Duluth challenges the district court's denial of its motion for summary judgment based on statutory recreational immunity, arguing that the court erred in concluding that whether an artificial and allegedly dangerous condition was "hidden," such that appellants would have a duty to warn, involved a genuine issue of material fact. Because we agree that there is a genuine issue of material fact, we affirm denial of summary judgment.

## FACTS

Respondents Janet A. Lishinski and Gary H. Lishinski, individually and as trustees for the heirs and next-of-kin of Jessica A. Lishinski, filed this wrongful-death action against appellant City of Duluth. The Lishinski's daughter, Jessica A. Lishinski, died as the result of injuries sustained while in-line skating on a blacktop pathway in Duluth's Leif Erickson Park.

At approximately 5:30 p.m. on May 18, 1999, Jessica Lishinski, a 21–year–old college student, and her roommate, Shari Undeland, decided to go in-line skating along Lake Superior on the Lakewalk path. The women drove to Canal Park, parked their car, and skated along the Lakewalk path. A sign placed along the path instructed in-line skaters to "[u]se blacktop only." As they approached Leif Erickson Park, the women stopped atop a hill to decide which way to go. The Lakewalk path continued through the park, while a path known as the "park path" veered to the right, toward a stage and Lake Superior. Both paths were blacktop and had a downward gradient, and the Lakewalk path was approximately one yard wider than the park path. There were no signs in Leif Erickson Park restricting the use of bicycles, in-line skates, or skateboards. Lishinski suggested that the two women use the path closer to the lake for that reason.

The park path leads to a stone stage, which abuts the natural slope of the Lake Superior shoreline and the beach area below. As the path approaches the stage, it curves sharply to the left, behind the stage, and straightens out for a short distance. The surface of the path then changes from blacktop to pavement stone. The pavement change is not visible until the skater turns the corner. Lishinski had never been on the park path before.

Lishinski, an experienced in-line skater, headed down the park path towards the stage. Undeland initially followed, but stopped to remove her skates because she was not comfortable going down the hill. While removing her skates, Undeland heard a crash and saw people running behind the stage. Undeland approached the area and saw Lishinski lying on the rocks near the lake. Lishinski died from her injuries.

Undeland did not see the accident, and no other eyewitnesses to the accident have been identified. Undeland stated in her deposition (a) that Lishinski had not consumed alcohol or taken drugs prior to the accident and was not racing, skating inappropriately or skating in a reckless manner, and (b) that immediately prior to the accident, Lishinski was standing up straight and not doing anything out of the ordinary.

Appellant City of Duluth asserted a defense of recreational immunity pursuant to Minn.Stat. § 466.03, subd. 6e (1998), and moved for summary judgment. The district court denied the motion, concluding that there were genuine issues of material fact regarding whether the allegedly artificial dangerous condition was "hidden," such that appellant had a duty to warn of the alleged danger. This appeal follows.

## ISSUE

Did the district court err by denying summary judgment and concluding, as a matter of law, that the city was not entitled to recreational-use immunity pursuant to Minn.Stat. § 466.03, subd. 6e (1998)?

## ANALYSIS

On appeal from summary judgment, this court considers whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). The evidence is viewed in the light most favorable to the non-moving party. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993). Summary judgment is appropriate when a governmental entity establishes that its actions are immune from liability. *In re Alexandria Accident of Feb. 8, 1994*, 561 N.W.2d 543, 546 (Minn.App.1997), *review denied* (Minn. June 26, 1997). Whether governmental action is protected by statu-

tory immunity is a question of law, which we review de novo. *Zank v. Larson*, 552 N.W.2d 719, 721 (Minn.1996).

Appellant argues that the district court erred by concluding that the city was not entitled to recreational-use immunity under Minn.Stat. § 466.03, subd. 6e (1998). That statute provides that a municipality is immune from tort claims

> based upon the construction, operation, or maintenance of any property owned or leased by the municipality that is intended or permitted to be used as a park, as an open area for recreational purposes, or for the provision of recreational services, * * * if the claim arises from a loss incurred by a user of park and recreation property or services. Nothing in this subdivision limits the liability of a municipality for conduct that would entitle a trespasser to damages against a private person.

*Id.* Accordingly, a municipality is entitled to recreational-use immunity unless its conduct would entitle a trespasser to recover damages against a private person. *Schaffer v. Spirit Mountain Recreation Area Auth.*, 541 N.W.2d 357, 360 (Minn.App.1995).

The general-trespasser standard of the Restatement (Second) of Torts § 335 (1965) defines the duty owed by a municipality to users of its recreational facilities. *Johnson v. Washington County*, 518 N.W.2d 594, 599 (Minn.1994); *Green–Glo Turf Farms, Inc. v. State*, 347 N.W.2d 491, 494 (Minn.1984). Section 335 provides that a possessor of land is subject to liability for bodily harm caused to a trespasser by an artificial condition on the land if

> (a) the condition
>
>> (i) is one which the possessor has created or maintains and

(ii) is, to his knowledge, likely to cause death or serious bodily harm to such trespasser and

(iii) is of such a nature that he has reason to believe that such trespassers will not discover it and,

(b) the possessor has failed to exercise reasonable care to warn such trespassers of the condition and the risk involved.

*Schaffer*, 541 N.W.2d at 360 (quoting Restatement (Second) of Torts § 335 (1965)). A plaintiff must prove all of the elements of section 335 to defeat immunity. *Id.*

██ Under section 335, "a landowner will be liable only for failing to exercise reasonable care to warn trespassers about hidden, artificial dangers created or maintained by the landowner." *Sirek v. State, Dep't of Natural Res.*, 496 N.W.2d 807, 810 (Minn.1993). Whether a condition was hidden or concealed depends on the visibility of the condition, not on whether the injured party actually saw the danger. *Steinke v. City of Andover*, 525 N.W.2d 173, 177 (Minn.1994). If "a brief inspection would have revealed the condition, it is not concealed." *Johnson v. State*, 478 N.W.2d 769, 773 (Minn.App.1991) (citation omitted). Recreational users are required to be alert to conditions existing on the land. *Sirek*, 496 N.W.2d at 812.

Appellant argues that Minnesota law requires an objective analysis of whether a condition is hidden and that the district court failed to apply that law to the facts of this case. *See Steinke*, 525 N.W.2d at 177 (common earthen drainage ditch not hidden or artificial condition, where plaintiff failed to make even cursory inspection of land before snowmobiling); *Sirek*, 496 N.W.2d at 812 (state immune for injuries to supervised six-year-old girl who ran in front of car, crossing highway that was visible for 100 feet before trail ended); *Schaffer*, 541 N.W.2d at 361 (municipality immune from liability where 14–year–old girl ran into metal barrel while skiing, because barrel was not a hidden hazard and large portion of barrel and its yellow top were visible); *Watters v. Buckbee Mears Co.*, 354 N.W.2d 848, 851 (Minn. App.1984) (under restatement, vertical drop in dirt hill was not concealed from plaintiff injured while four-wheeling because brief inspection would have revealed it).

Appellant argues that because the alleged dangerous condition could have been seen with a brief inspection, under Minnesota law, it was not hidden. Appellant contends that, as a result, summary judgment was appropriate.

The district court, however, rejected this argument, stating:

[Appellant] points to several cases in which our appellate courts have held certain particular hazards were not hidden from view and that as a result[,] persons injured in incidents were not entitled to recovery under the statute. The Court finds those cases distinguishable, however. *The [respondents] here have presented evidence to suggest the particular hazard claimed to exist was hidden or concealed in nature rather than obvious upon reasonable inspection.*

(Emphasis added.)

We agree. In *Sirek*, the highway where the child was struck was visible 100 feet before the trail ended and was not hidden. *Sirek*, 496 N.W.2d at 812. In *Schaffer*, photographs taken the day of the skiing accident reveal that the yellow barrel was clearly visible to skiers. *Schaffer* 541 N.W.2d at 359. And, in *Watters*, the men who were four-wheeling had been drinking and two of them had been on the property before and were familiar with the area. *Watters*, 354 N.W.2d at 849.

We find *Noland v. Soo Line R.R.*, 474 N.W.2d 4 (Minn.App.1991), *review denied* (Minn. Sept. 13, 1991), helpful. In *Noland*, this court reversed a grant of summary judgment, concluding that material facts were in dispute and warranted a trial. *Id.* at 7. A snowmobiler had driven over the side of a railroad trestle and was injured. *Id.* at 5. There was no evidence that the snowmobiler had been in the area before or was aware that she was on a trestle at the time of the accident. *Id.* Moreover, the snowmobiler stated that the trestle was covered with snow and that visibility had been reduced by darkness and blowing snow. *Id.* This court concluded that because "[t]hese conditions may have obscured the trestle enough to make it difficult for even an attentive snowmobiler to discover," the plaintiff had raised "a fact question about whether the trestle was so concealed respondent had reason to believe trespassers would not discover it." *Id.* at 7. Thus, there was a fact question as to whether the allegedly dangerous condition involved in that accident was hidden or concealed.

Appellant disputes the applicability of *Noland* to this case, arguing that the defendant in that case did not argue that the condition was *visible*, but rather that the trestle was not on a snowmobile trail and the plaintiff should have known that she was on a railroad right-of-way. *See id.* But this court clearly described the "fact question" raised by the plaintiff as "whether the trestle was so *concealed* [the defendant] had reason to believe trespassers would not discover it." *Id.* (emphasis added).

Appellant asserts that because variations in the surface of multi-use trails should be anticipated, recreational immunity should apply. *See Johnson*, 478 N.W.2d at 773 (municipality immune where pedestrian tripped over uneven sidewalk and

fell); *Lundstrom v. City of Apple Valley*, 587 N.W.2d 517, 520 (Minn.App.1998) (municipality immune where tennis player tripped over court tape). We disagree. In *Johnson*, the pedestrian admitted that she was looking down as she walked over a sidewalk joint and fell. *Johnson*, 478 N.W.2d at 773. In *Lundstrom*, the tennis player admitted that he saw the tape on the court prior to tripping on it. *Lundstrom*, 587 N.W.2d at 520. In contrast, Lishinski had never been on the park path before, and the sharp curve and changing surface of the path were concealed by the stage. No signs warned of danger.

We conclude that the district court did not err by denying summary judgment. Appellant's posted signs instructed Lishinski to stay on the blacktop path. The park path, although a little narrower that the Lakewalk path, was made of blacktop. There was no warning of either the curve or the surface change. Pictures from the scene of the accident demonstrate that the park path appears to continue with the same surface conditions behind the stage as before and after the stage. Two experts testified that in-line skaters were not likely to discover the hidden danger until they found themselves imperiled. Appellant conceded at oral argument that an in-line skater is not required to walk an entire pathway before skating.

We note that we need not speculate as to whether respondents will succeed in their lawsuit, but must only determine whether the district court erred in finding that a genuine issue of material fact remains for trial. Viewing the evidence in the light most favorable to respondents, we agree with the district court that it is for the jury to decide whether the condition behind the stage was hidden or whether brief inspection would have revealed the condition.

Appellant also argues that the district court clearly erred by viewing subjectively whether Lishinski actually saw the alleged dangerous condition. For support, appellant cites the following statement by the court:

Clearly, if decedent had inspected the area behind the stage it would have been readily apparent the character of the pathway changed abruptly very shortly after it went behind the stage structure.

But the district court also said:

As noted, however, viewed from the brow of the hill[,] the pathway arguably appeared to proceed with the same surface characteristics behind the stage as before it and after it. In effect, [respondents] suggest the setup of the pathway created the illusion of a continuity of the pathway surface. The Court is asked by [appellant] to conclude as a matter of law, given the particular facts and physical configuration of the pathway, the hazard was not hidden and that decedent must bear sole responsibility for proceeding as she did. The Court concludes neither the record nor the law supports defendant's request for relief on this ground. This issue is properly one for jury determination.

It is clear from the above language that the district court did not focus on whether the decedent actually saw the alleged dangerous condition, but instead took an objective viewpoint. Appellant's argument is without merit.

■ In the reply brief, appellant argues that respondents have failed to prove the *cause* of Lishinski's accident. But as appellant admits in its brief, interlocutory appeal is not available for the denial of a motion for summary judgment based on a lack of evidence to sustain a finding of causation. A governmental entity is entitled to appellate review of an adverse ruling on a claim of immunity, but orders denying summary judgment are generally not appealable, and interlocutory review does not extend to issues that do not involve immunity from suit. *McDonough v. City of Rosemount,* 503 N.W.2d 493, 496 (Minn.App.1993), *review denied* (Minn. Sept. 10, 1993). Therefore, any arguments regarding causation are beyond the scope of this appeal.

## DECISION

The district court properly denied summary judgment because a genuine issue of material fact remains for the jury. The jury must determine whether the condition of the park path was hidden from Lishinski and whether a brief inspection would have revealed the condition. We affirm the denial of summary judgment.

**Affirmed.**