## LELA JOHNSON AND ANOTHER v. CITY OF THIEF RIVER FALLS.

164 N. W. (2d) 71.

January 17, 1969—No. 41176.

*Wurst & Peskar* and *Robert A. Wurst,* for appellant.

*Curtis L. Charlson,* for respondents.

Heard before Knutson, C. J., and Otis, Rogosheske, Sheran, and Peterson, JJ.

PETERSON, JUSTICE.

Plaintiff Lela Johnson, a pedestrian, tripped in a hole in the surface of Third Street at its intersection with La Bree Avenue, in Thief River Falls, Minnesota. La Bree Avenue is a city street, but Third Street is part of the state trunk highway system. Defendant city has regulated pedestrian and vehicular traffic at this busy intersection, including the maintenance of electric semaphores and the designation by painted lines of a crosswalk on Third Street. The city has regularly cleaned the intersection, including the crosswalks, by removing snow in winter months and sweeping or flushing the surface at other times. It does not, however, repair or otherwise maintain Third Street, and it did not at any time repair this hole in the crosswalk or any other holes in the road surface except for one instance where it had damaged the surface with its own cleaning equipment.

The issue for decision is whether a municipality is responsible to a pedestrian who is injured as a result of a defect in the surface[1] of a state trunk highway within its municipal boundaries, absent an agreement between the municipality and the state by which the municipality affirmatively assumes the responsibility of maintenance,[2] where the injury occurs

---

[1] The jury implicitly found that the responsible public authority negligently *failed to repair* the hole in the highway. There was no evidence that defendant city *created* the hole. The jury found, too, that the proximate cause of plaintiff Lela Johnson's injury was that negligence and that she was not contributorily negligent. The jury awarded damages to her of $3,750, and to her husband, plaintiff Ernest Johnson, $125.

[2] Minn. St. 161.38, subd. 3, authorizes agreements between the commissioner of highways and a municipality by which the latter assumes the "performance and responsibility" of maintenance of trunk highways within the limits of the municipality "upon such terms as may be agreed upon."

in a crosswalk designated and policed by the municipality. The trial court submitted the case to the jury on the theory that the municipality had "some responsibility" for the maintenance of a crosswalk on a state trunk highway within its boundaries.[3] We hold, to the contrary, that the municipality has no responsibility in these circumstances.[4]

---

This statute was enacted pursuant to Minn. Const. art. 16, § 11. Although plaintiffs additionally asserted that an informal maintenance agreement existed, we agree with the trial court's conclusion that plaintiffs failed to prove any such agreement. We do not intimate, however, that a municipality may be found to have assumed such responsibility by anything less than a formal agreement. See, e. g., Paul v. Faricy, 228 Minn. 264, 37 N. W. (2d) 427, and footnote 8, *infra*.

[3] The court stated in its careful memorandum: "The crucial question is whether the city is relieved of responsibility for the safe condition of the crosswalk because of the provisions of the constitution and statutes which require the commissioner of highways to locate, construct, reconstruct, improve and maintain the trunk highway system (M. S. 161.20, subd. 2) and relieves the road authority—here the city —of responsibility therefor (M. S. 161.16, subd. 1). * * *

\* \* \* \* \*

"While a crosswalk can be and usually is a part and portion of a street, it is also an extension of a sidewalk. M. S. 169.01, subds. 33 and 37. In laying out the crosswalk the city not only invited, but restricted pedestrians to using it as a means of crossing from one sidewalk to another. * * * In view of these factors it is only fair to impose some responsibility for the maintenance of the crosswalk on the city.

\* \* \* \* \*

"Had [this] street not been made a part of the trunk highway system, recovery under the facts and circumstances in this action would not be denied. It seems quite harsh and unfair to deny recovery for the sole reason that the street was taken over as a part of such system."

[4] We agree with the trial court that this result is harsh. The state grants no right of action against itself with respect to its construction and maintenance of the state highway system, but does impose liability upon its political subdivisions for their own streets and sidewalks. See, Schigley v. City of Waseca, 106 Minn. 94, 97, 118 N. W. 259, 260, 19 L.R.A. (N. S.) 689. The solution, however, is legislative and not judicial. Given the clear findings of the jury, including its assessment of the damages sustained, we think it not unlikely that the legislature would approve a claim made to it by these plaintiffs.

The *exclusive* authority and responsibility of the state for the maintenance of its *entire* trunk highway system as implemented by statute[5] is embedded in our state constitution.[6] This exclusive authority and consequent responsibility of the state is not diminished by the legislative delegation to municipalities of police power to regulate traffic upon highways within the municipality.[7] These conclusions, we think, have been affirmed by these leading cases: Automatic Signal Advertising Co. v. Babcock, 166 Minn. 416, 208 N. W. 132; Lundstrom v. Giacomo, 194 Minn. 624, 261 N. W. 465; Paul v. Faricy, 228 Minn. 264, 37 N. W. (2d) 427.

The Automatic Signal case affirmed the power of the commissioner of highways to regulate the erection and maintenance of traffic control signs on a state trunk highway within the boundaries of a municipality,

[5] The statutory authority of the commissioner of highways is to "carry out the provisions of article XVI, section 2" of the constitution. Minn. St. 161.20. Where the state takes over a road, including a city street, as part of the trunk highway system, it is vested, as stated in § 161.18, "with *all* rights, titles, easements, and appurtenances thereto appertaining, held by or vested in any of the political subdivisions"; and, as declared in § 161.16, subd. 1, "[t]he road authority which had jurisdiction over such road shall, thereupon, be *relieved of responsibilities thereto*; * * *." (Italics supplied.)

[6] Minn. Const. art. 16 provides in part: "Sec. 2. There is hereby created a trunk highway system which shall be established, located, constructed, reconstructed, improved and *maintained* as public highways *by the state.* * * *

\* \* \* \* \*

"Sec. 11. The legislature may authorize any political subdivision, *upon such terms, conditions and in such manner as shall be provided by law*, to aid or lend aid in the * * * maintenance of trunk highways within their respective boundaries." (Italics supplied.)

[7] The state has declared in Minn. St. 169.03: "The provisions of this chapter shall be applicable and uniform throughout this state and in all political subdivisions and municipalities therein, and no local authority shall enact or enforce any rule or regulation in conflict with the provisions of this chapter unless expressly authorized herein." Section 169.21 contemplates that municipal authorities may regulate pedestrian crossing of state trunk highways within their boundaries; and this includes the designation of marked crosswalks. § 169.01, subd. 37.

based upon the paramount constitutional and statutory policy of establishing uniformity in the construction and maintenance of the trunk highway system. And in affirming that policy and power this court underscored its geographical completeness (166 Minn. 420, 208 N. W. 133):

"The phrase 'to reconstruct, improve and maintain such trunk highway,' as used in the statute, means to build and keep in proper condition for public traffic, *not a part of such trunk highway but the whole of it*, that is, to keep the roadway in repair and open to public traffic and, insofar as may be, free from dangerous obstruction." (Italics supplied.)

The existence of municipal authority to regulate public vehicular and pedestrian traffic upon a state trunk highway within that municipality, as the court made plain, is not at odds with the nonexistence of municipal power to maintain the surface of the highway so regulated (166 Minn. 422, 208 N. W. 134):

"The statute * * * relieves cities and villages from 'responsibilities and duties' on trunk highways within their municipality. They no longer have any authority to expend public money thereon for any purpose. This statute in no way interferes with the police power vested in cities or villages. The general power of the city or village to regulate and control traffic, except insofar as it is limited by the highway act, is not questioned. It may regulate travel upon trunk highways by ordinances not in conflict with the state law, but that power cannot be extended so as to encroach upon the authority given the commission[er] by the statute."

Lundstrom v. Giacomo, *supra*, more directly holds that a municipality is not under a duty to maintain a municipal segment of a state trunk highway. The distance between the piers of a railroad bridge over a state trunk highway within the village of Hibbing was less than that required by statute. The trial court directed a verdict for the village in an action brought by a passenger in the automobile which collided with one of the piers. Applying the doctrine of the Automatic Signal case, this court affirmed.

Paul v. Faricy, *supra*, is a most comprehensive consideration of the liability of a municipality for injuries to persons upon its own streets or

upon a state trunk highway maintained by a municipality under a mainte-nance agreement with the state. It is a more specific application of the doctrine of Automatic Signal to an injured pedestrian's claim that the municipality failed to maintain a portion of the trunk highway set aside for the safety of pedestrians. The state, by its own arrangement with a private contractor, had constructed a safety island on University Avenue, immediately to the west of its intersection with Vandalia Street, "for the convenience and protection of pedestrians intending to board eastbound streetcars." 228 Minn. 269, 37 N. W. (2d) 431. An automobile collided with a concrete bumper block on the safety island. Because of the faulty construction of the island, the force of the impact tipped the bumper block over onto a young boy standing on the island. This court acknowl-edged a legislative intent to make a chartered municipality liable for neg-ligence in the maintenance and repair of its own highways, streets, and sidewalks *if* such highway, street, or sidewalk is then under the municipality's control, itself "an exception to the general rule that a mu-nicipality is not liable for torts committed in the exercise of its public or governmental powers." 228 Minn. 274, 37 N. W. (2d) 434. As to a municipal street which is part of the state trunk highway system, the court however held (228 Minn. 276, 37 N. W. [2d] 435) that the statu-tory relief of the municipality "from responsibilities and duties thereon" plainly pertained "to the responsibilities for the maintenance of such streets" except only as a municipality is reinvested with such responsi-bility by voluntarily entering into a maintenance agreement with the state. [8] The court held that it was therefore error to have instructed the jury that it might consider whether the accident was caused by any negligence of

[8] The formal agreement between the commissioner of highways and the city of St. Paul provided that the city would provide maintenance upon all state trunk highways within its corporate limits, but its detailed terms expressly provided that it should "not be the obligation of the City * * * to do any work which shall consist of *extraordinary maintenance, betterments, con-struction, or reconstruction.*" This exclusionary language of the agreement was held applicable to the safety island, and the court held (228 Minn. 279 to 280, 37 N. W. [2d] 436) that the city's liability for negligence in main-tenance must be measured and limited by the terms of its maintenance con-tract.

the city in the maintenance of the safety island. It was likewise fundamental error to submit for the jury's consideration the claim of plaintiffs in the instant case that this unfortunate accident was caused by defendant's failure to maintain the crosswalk surface of Third Street, there being no evidence to support any finding that the surface defect was created by any act of defendant or that it had otherwise contractually assumed responsibility for its repair and maintenance.

Reversed, but without costs or disbursements to defendant.