Timothy John **HUVER**, a minor, by his
father, John **HUVER**, and John
Huver, Respondents,

v.

Cheryl **OPATZ**, et al., Defendants,

LeSauk Township, petitioner, Appellant.

No. C4–85–585.

Supreme Court of Minnesota.

Aug. 15, 1986.

Michael J. Ford, St. Cloud, for appellant.

Robert J. King, Minneapolis, for respondents.

WAHL, Justice.

This appeal arose from an order for summary judgment dismissing a personal injury action against LeSauk Township. Timothy John Huver, injured in a motor vehicle accident on a townline road between LeSauk Township and St. Wendel Township in Stearns County, sued both townships, alleging negligent design and maintenance of the road. The trial court granted summary judgment for LeSauk on the ground that a 1970 agreement between the townships had allocated responsibility for construction and maintenance of the allegedly unsafe and defective portion of the road to St. Wendel. The court of appeals reversed. We reverse the decision of the court of appeals and reinstate the judgment of the trial court.

Townline Road runs north and south along the boundary between LeSauk, which lies to the east of the road, and St. Wendel, which lies to the west. The town boundary meets in the middle of the road with one side of the road in each township. Townline Road has been in existence and use as a public road for 50–75 years. Until 1970, Townline Road was jointly maintained by the two townships, who shared all expenses. LeSauk and St. Wendel agreed and jointly resolved in the spring of 1970 to divide their responsibilities for Townline Road differently. A perpendicular line was drawn across the road and LeSauk agreed to construct and maintain the whole width of the two miles of the road to the south of the line, while St. Wendel agreed to construct and maintain the whole width of the

two miles of the road north of the line. The 1970 resolution and agreement read, in relevant part:

[Each town] shall construct and maintain all that part of said Town line Road line [to its side of the dividing line] to the whole width thereof, including the cost of constructing and maintaining any and all bridges, culverts, and conduits for natural waterways or existing drainage ditches on said portion of the Town line Road, including the cost of constructing and maintaining bridges, culverts and conduits as may be made necessary by the construction of a drainage ditch or by the changing, widening or alteration of any drainage ditch, or by the altering or changing of any water course on said portion of the Town line Road in the future.

The resolution and agreement was executed pursuant to Minn.Stat. § 164.12 (1984), which provides, in relevant parts:

Subd. 2. *Division of Responsibilities.* The town boards shall divide the length of the road proposed to be established, altered, or vacated into two parts. When it is proposed to establish or alter a road, the division shall be made so as to divide as nearly equal as possible the cost of right of way, construction, and maintenance of the entire road. If the proposal is to vacate a road, the division shall be made so as to divide as nearly equal as possible any damages that may be occasioned thereby.

Subd. 3. *Agreement.* After the division the boards shall enter into an agreement specifying which part shall be vacated, or opened, constructed, and maintained by each.

Minn.Stat. § 164.12, subds. 2 and 3 (1984).

On July 4, 1983, Huver was a passenger in a car driven by Cheryl Opatz. Opatz was driving along Townline Road when the car struck a large granite outcropping that extends from the adjoining property to the west side of the road. Huver was seriously injured. He alleges that LeSauk and St. Wendel knew of the existence of the gran-

ite outcropping on or near the road and failed to either post warning of it or to remove it, thereby making the condition of the road defective and hazardous. The granite outcropping is situated within the boundaries of St. Wendel Township and on that portion of Townline Road for which St. Wendel is responsible under the 1970 agreement.

The question before us is whether summary judgment was properly granted. Summary judgment is proper only where the record shows there is no genuine issue as to any material fact and a party is entitled to judgment as a matter of law. Minn.R.Civ.P. 56.03. Our review of an order for summary judgment is limited to determining: (1) whether there are genuine issues of material fact; and (2) whether the trial court erred in its interpretation of the law. *Betlach v. Wayzata Condominium*, 281 N.W.2d 328, 330 (Minn.1979). In order to determine the propriety of summary judgment in this case, we must decide two issues:

> (1) Whether the trial court erred in its interpretation of Minn.Stat. § 164.12 (1984), on which the 1970 agreement between LeSauk Township and St. Wendel Township was based; and
>
> (2) Whether the trial court erred in granting summary judgment because there existed genuine issues of material fact.

## I.

We will consider first whether the trial court erred in its interpretation of Minn. Stat. § 164.12 (1984), on which the 1970 agreement between LeSauk Township and St. Wendel Township was based. The trial court held that by virtue of the 1970 agreement between the townships, LeSauk had no duty to maintain the portion of Townline Road where the accident occurred and was, therefore, not liable for negligence in maintaining that portion of the road. The court of appeals, reversing this decision, held that section 164.12 permits a township to shift the responsibility for the cost of construction and maintenance of a townline

road, but not the legal liability for injuries caused by negligent construction and maintenance. *Huver v. Opatz*, 372 N.W.2d 95, 98 (Minn.Ct.App.1985). The court of appeals, therefore, determined that the 1970 agreement allocated to St. Wendel the cost of maintaining the relevant portion of Townline Road, but did not relieve LeSauk of continuing legal responsibility. *Id.*

■ Consideration of the legal effect of an agreement entered into pursuant to section 164.12 begins with a review of basic principles underlying the legal liability of townships for design and maintenance of townline roads. A townline road is the responsibility of the adjoining townships. *See* Minn.Stat. § 164.02, subd. 1 (1984). A township has a common law duty to maintain that portion of the road within its territorial boundaries in a safe condition. *See Paul v. Faricy*, 228 Minn. 264, 272, 37 N.W.2d 427, 432 (1949) (negligence cause of action inferred when a city is given full power of control over the streets and highways within its limits). To facilitate cooperation between adjoining townships in the construction and maintenance of townline roads, the legislature enacted section 164.-12, authorizing agreements by which townships are to structure that cooperation.

We must determine whether section 164.-12 authorizes an agreement that allocates both financial and legal responsibility for the road between adjoining townships, as the trial court held, or only allows townships to agree to share the cost of maintaining a road, as the court of appeals held. We have never directly construed section 164.12. We discussed the statute in *Shinneman v. Arago Township*, 288 N.W.2d 239 (Minn.1980), where we recognized that the legislature did not intend that town lines operate as insuperable barriers, but rather intended that townships enter agreements of mutual convenience regarding roads on or along town lines. When such roads are to be established or altered under section 164.12, we stated, "the town boards are to divide the cost and responsibility for maintenance" and to en-

ter into agreements with regard thereto. *Id.* at 242.

In an earlier case, *Johnson v. City of Thief River Falls*, 282 Minn. 281, 164 N.W.2d 71 (1969), we considered whether the City of Thief River Falls had, by contract, assumed a duty to maintain a road that ran within its city limits, but that had been made part of the state trunk highway system. We held that absent an express agreement assuming responsibility for maintaining the highway, the city was not liable for negligence in that maintenance. *Id.* at 286–87, 164 N.W.2d at 74. Implicit in our reasoning in *Johnson* is the presumption that if the city had expressly contracted with the state to assume the maintenance of the highway, the city would also have been held to have assumed any liability for negligence in performing that duty. That this was our meaning is further indicated by our citation in footnote 8 to *Paul v. Faricy*, 228 Minn. 264, 279–80, 37 N.W.2d 427, 436 (1949). In *Paul* we held that if a city has a contract to maintain a highway, the city's liability for negligence in performing that maintenance will be measured and limited by the terms of its contract. When *Johnson's* rationale is thus considered, it is clear that our decision in that case recognizes that where a contract fully delegates responsibility for maintenance of a road, the legal risk for failure to adequately perform the task, i.e. the liability for negligence, goes with it.[1]

Only a common sense reading of section 164.12, one that authorizes adjoining townships to agree to allocate both financial and legal duties as regards townline roads, will effectuate the legislative intent. If the effect of an agreement pursuant to the statute would be to allocate supervision and control over construction and maintenance, but not the risk of negligence, these agreements would not benefit townships. In this case, for instance, LeSauk, which has no ongoing responsibility for the relevant portion of Townline Road, might be required, by a narrow reading of its agreement with St. Wendel, to closely supervise St. Wendel's ongoing construction and maintenance to protect itself from tort liability. Under such a reading, townships would be better able to fulfill their legal duty, and to protect themselves from tort liability, by not entering the joint agreement authorized by the statute. Thus, to interpret the legal effect of agreements authorized by section 164.12 as allocating only financial responsibility would violate the legislature's intent to provide adjoining townships with a workable mechanism by which to share their joint responsibility for townline roads.

We therefore hold that section 164.12 authorizes agreements between adjoining townships that allocate the responsibility for both the cost of construction and maintenance of townline roads and the legal liability for injuries caused by negligent construction and maintenance of those roads. The 1970 agreement between LeSauk and St. Wendel followed the statute and was properly interpreted by the trial court to have the effect of releasing LeSauk from liability for negligent construction or maintenance of the portion of the road allocated by the agreement to St. Wendel.

---

1. Huver argues this reading of *Johnson*, permitting a township to contractually delegate its duty of construction and maintenance, is in conflict with our decision in *Donald v. Moses*, 254 Minn. 186, 94 N.W.2d 255 (1959). In *Donald*, we stated that while the City of Minneapolis could, by ordinance, make adjoining landowners and occupants responsible for keeping city sidewalks free of snow and ice, the city could not thereby absolve itself of its duty to keep the sidewalks in a safe condition. We held the city remained primarily liable for negligent maintenance. *Id.* at 196, 94 N.W.2d at 262. Our decision in *Donald*, however, is not on point. The issue in *Donald* was whether a governmental entity with the legal duty to maintain a sidewalk could, by ordinance, absolve itself of that responsibility by shifting the duty and resulting liability to landowners and occupants. We held it could not. By contrast, the issue before us today is not whether a township with a legal duty to maintain a town road can absolve itself of that responsibility by shifting the duty and resulting liability to the adjoining landowner, but rather what statutory authority adjoining townships have to cooperate in the efficient performance of their legal responsibilities.

## II.

We have determined the trial court did not err in its interpretation of the law. We now ask whether there are genuine issues of material fact that would have precluded summary judgment. Huver alleges first that the 1970 agreement is legally irrelevant because the negligence complained of occurred before that agreement was executed. The town supervisors of LeSauk and St. Wendel stated in depositions that in the period before 1970, the townships shared, on an informal basis, the expense of maintaining the whole of Townline Road. During this period, neither LeSauk nor St. Wendel took steps to remove the granite outcropping, which has been located in its present relation to Townline Road throughout the road's existence, or to post any warning to motorists of its presence. Huver claims this presents a factual issue as to whether LeSauk assumed a duty of construction and maintenance for the whole of the road during the period before 1970.

Huver also alleges that even if the 1970 agreement protects LeSauk from legal liability, the terms of that agreement have been modified by the townships' joint construction and maintenance efforts since 1970. There is evidence that in 1974, LeSauk contributed funds to be used to replace barricades near a culvert washout on the part of the road for which St. Wendel was responsible under the agreement. There is also evidence that LeSauk consulted with St. Wendel before installing a stop sign on a part of the road for which LeSauk was responsible under the agreement, but which was within the territorial boundaries of St. Wendel township.

These are not genuine issues of material fact that require reversal of the trial court's order for summary judgment. As to the first allegation, before the 1970 agreement was executed, LeSauk had no liability for negligent construction or maintenance on that portion of Townline Road containing the granite outcropping. During that period, each township had the duty to maintain the portion of the road within its territorial boundaries. The portion of Townline Road where the granite outcropping is located is not only St. Wendel's responsibility pursuant to the 1970 agreement, it is within St. Wendel's territorial township boundaries as well. Even without the 1970 agreement, the offending part of Townline Road has always been solely within the scope of St. Wendel's legal responsibility. As to the second allegation, we do not find the informal joint efforts at construction or maintenance since 1970 either modified or waived the formal agreement between these governmental entities. It is true that under certain circumstances a written contract may be modified by subsequent acts and conduct of the parties to the contract. *Wormsbecker v. Donovan Construction Co.*, 247 Minn. 32, 41, 76 N.W.2d 643, 649 (1956). In *Johnson, supra.*, however, we stated that an informal maintenance agreement between a city and the state would be insufficient to hold the city liable for negligence in maintaining a state highway. We indicated that we would not find a municipality "to have assumed such responsibility by anything less than a formal agreement." 282 Minn. at 283 n. 2, 164 N.W.2d at 72 n. 2. In this case we do not find a few instances of joint consultation and cost-sharing sufficient to show that since 1970 LeSauk has assumed maintenance responsibility for the whole of Townline Road.

Finding no error in the trial court's interpretation of the law and no genuine issue of material fact that would require us to reverse the order for summary judgment, we reverse the court of appeals and reinstate the order of the trial court.

Reversed; order of the trial court granting summary judgment reinstated.