*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A15-1018**

Jessica Mattson,
Appellant,

vs.

City of Rushford,
Respondent,

Minnowa Construction, Inc.,
Respondent,

State of Minnesota Department of Transportation,
Respondent,

Edwards and Kelcey, Inc., et al.,
Defendants,

Minnowa Construction, Inc.,
Third Party Plaintiff,

vs.

Eric Kaiser d/b/a Kaiser Concrete,
Third Party Defendant.

**Filed April 18, 2016**
**Affirmed**
**Connolly, Judge**

Fillmore County District Court
File No. 23-CV-13-514


Robert M. Speeter, Patrick V. Johnson, Emily Johnson Streier, Speeter & Johnson, Minneapolis, Minnesota (for appellant)

Jason J. Kuboushek, Iverson Reuvers Condon, Bloomington, Minnesota (for respondent City of Rushford)

Lori Swanson, Attorney General, Kathryn A. Fodness, Assistant Attorney General, St. Paul, Minnesota (for respondent Minnesota Department of Transportation)

Joshua I. Welle, Welle Law PC, Bloomington, Minnesota (for respondent Minnowa Construction Inc.)

Emily B. Uhl, Neal Robinson, The Cincinnati Insurance Company, Coon Rapids, Minnesota (for respondent Eric Kaiser d/b/a Kaiser Concrete)

Considered and decided by Connolly, Presiding Judge; Stauber, Judge; and Reilly, Judge.

## U N P U B L I S H E D   O P I N I O N

**CONNOLLY**, Judge

Appellant challenges the summary-judgment dismissal of her negligence claims against respondents City of Rushford (Rushford), Minnesota State Department of Transportation (MNDOT), and Minnowa Construction, Inc. (Minnowa), arising out of injuries suffered after falling into a culvert while bicycling. Appellant asserts that the district court improperly applied summary-judgment standards and erred by determining that (1) MNDOT and Rushford owed no duty to maintain the sidewalk and culvert; (2) MNDOT and Rushford were relieved of any liability by appellant's contributory negligence; (3) MNDOT and Rushford are protected by statutory, (vicarious) official, and recreational immunity; (4) Minnowa was not negligent in the design and construction of the sidewalk; and (5) open and obvious conditions around the sidewalk precluded recovery. Appellant also asserts that respondents were engaged in a joint enterprise and thus the

2

negligence of one should be imputed to the others. We affirm. In a cross-appeal, respondent Minnowa challenges the district court's grant of summary judgment to Eric Kaiser d/b/a Kaiser Concrete (Kaiser) on its contribution and indemnity claims. Because there are no material facts in dispute and the district court correctly applied the law, we affirm that decision as well.

## FACTS

Appellant Jessica Joy Mattson was severely injured in a bicycle accident, which occurred when she rode her bicycle over a bridge and off a sidewalk connecting the State Highway 43 Bridge to Creekside Park, Rushford High School athletic fields, and the Root River bike trail, landing in an unseen culvert. The day of the accident she was on a bike ride with her fiancé and decided she was tired and wanted to go home early. Appellant took a route she had driven before, but had never biked. As she reached the top of the bridge, before beginning the downward slope, appellant noticed road construction ahead and made a decision to turn right into Creekside Park. Crossing the bridge on the sidewalk on the right hand side of the street, appellant began to coast as the bridge sloped downhill.

At this point, appellant agrees that there were no signs indicating that she was on a bike trail and that she knew she was no longer on the Root River bike trail. At the base of the bridge, appellant noticed that the sidewalk turned sharply to the right at a 90-degree angle. Rather than attempting to stay on the sidewalk, which she thought would be harder for her to do, appellant thought that she could "just ride over into some grass," onto a paved parking lot, and then onto a gravel road that would take her home. She believed that it would be "less distance," creating a shorter route, and easier than trying to make the hard

3

corner, hitting her brakes, or slowing down hard.[1] As she approached the corner, she saw that instead of a ride through the grass, her planned route led to a drop-off into a culvert, and rocks. She then braked in a split-second decision, but she was unable to avoid the drop-off. She flipped over the front of the bicycle and onto the rocks. Appellant has since undergone numerous surgeries, suffers from severe chronic pain, and has permanent injuries that have prevented her from working as a result of the accident. No one disputes the severity of her injuries.

The sidewalk and culvert upon which appellant was injured was part of the MNDOT Highway 43 Bridge Construction Project (Project), which included the construction of a bridge over Rush Creek in Rushford, Minnesota. Edwards and Kelcey Inc. (E & K) was contracted to design the Project, Minnowa was hired as the general contractor, and Rushford owned the land needed as a right-of-way. Rushford requested that MNDOT construct a sidewalk on the east side of the bridge. The purpose of the sidewalk on the east side of the bridge was to provide a "direct pedestrian route from the high school to the City Park and school athletic fields (all located on the east side of the highway) without crossing TH 43." The bridge is right next to a city park and tennis courts and is used for recreational and pedestrian activities.

As required by the federal Department of Transportation Act of 1966, MNDOT prepared a "Programmatic Section 4(f) Evaluation" (4(f) Evaluation) of the impact of the

---

[1] However, there is no evidence that she lost control of the bike or was physically unable to make the right turn.

4

new bridge upon Creekside Park. The 4(f) Evaluation stated that replacement of the bridge was preferred, in part, because

> Access for pedestrians, bicycles and other forms of non-motorized transportation would be improved due to the construction of an 8-foot wide walkway on each side of the bridge . . . . The addition of the sidewalk on the east side of the bridge will improve the safety of the students walking or biking between the two.

The access to the park as designed by E & K was a straight sidewalk coming from the bridge, "then tak[ing] a slight north and east direction and proceed[ing] to go down the embankment from the bridge elevation down into the park" at a five percent slope. [2] At some point in the construction process, the original E & K designs were altered and the sidewalk was extended to Creekside Park parking lot by shortening it, and from the shortened end, turning the sidewalk nearly 90 degrees to the right, extending the sidewalk to a parking lot by the tennis courts. While the original project plans did not refer to this alteration, the as-built drawings created after the completion of the Project note: "Grading bridge 23022, sidewalk as designed to end in ditch bottom. Place[d] 2 25-foot 57 span culverts in ditch and built sidewalk over culverts." The as-built drawings were signed and approved by Eric Breitsprecher, MNDOT's head inspector for the Project and by Mark Anderson, MNDOT's head engineer for the Project.

During the construction of the Project, MNDOT employed engineers, who were responsible for ensuring that the project is built according to the plans and specifications,

---

[2] The slope on the sidewalk plans was five percent and the maximum recommended is as high as 8.33 percent.

and inspectors, who were responsible for day-to-day inspection of the contractor's work for conformance with the contract documents. Several documents were incorporated into the contract for the Project, including the MNDOT Standard Specifications for Construction (Standard Specifications). The Standard Specifications indicate that the MNDOT engineer, Mark Anderson, "has authority to administer the Contract, rule on apparent discrepancies, fulfill intentions, and allow for construction needs in the performance and completion of the work . . . . The engineer will decide all discretionary matters as they arise." Furthermore, section 1402 of the Standard Specifications provides that MNDOT may alter the details of construction as necessary for proper completion of the Project and as desired for reasons of public interest, at any time during construction.

Following a hearing on all of respondents' motions for summary judgment, the district court granted summary judgment against appellant as to each respondent. In a separate order, the district court granted summary judgment to Kaiser on Minnowa's claim for contribution and indemnity.

## D E C I S I O N

"We review a district court's summary judgment decision de novo. In doing so, we determine whether the district court properly applied the law and whether there are genuine issues of material fact that preclude summary judgment." *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010) (citation omitted). "A motion for summary judgment shall be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to a judgment as a matter

6

of law. On appeal, the reviewing court must view the evidence in the light most favorable to the party against whom judgment was granted." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn. 1993) (citation omitted); *see* Minn. R. Civ. P. 56.03. In opposing a motion for summary judgment, general assertions are not enough to create a genuine issue of material fact. *Nicollet Restoration, Inc. v. City of St. Paul*, 533 N.W.2d 845, 848 (Minn. 1995). An award of summary judgment will be affirmed if it can be sustained on any ground. *Winkler v. Magnuson*, 539 N.W.2d 821, 828 (Minn. App. 1995), *review denied* (Minn. Feb. 13, 1996).

Appellant alleges that the district court applied the incorrect standard for summary judgment. In granting summary judgment, the district court stated:

> A motion for summary judgement may not be opposed simply based on the pleadings, mere denials, mere allegations, or by postulating evidence that might be developed at trial. Instead, a genuine issue of material fact must be established by "substantial evidence", meaning that there must be evidence on which the jury could reasonably find for the nonmoving party.

(quotations omitted). Appellant argues that the district court erred because it "failed to engage in further discussion on the term 'substantial evidence' in its orders, and did not consider any of the more recent cases interpreting 'substantial evidence.'" Our supreme court has ruled that "[a] party need not show substantial evidence to withstand summary judgment. Instead, summary judgment is inappropriate if the nonmoving party has the burden of proof on an issue and presents sufficient evidence to permit reasonable persons to draw different conclusions." *Schroeder v. St. Louis County*, 708 N.W.2d 497, 507 (Minn. 2006). To prevail on appeal, a party must show both error and prejudice resulting

from the error. *Midway Ctr. Assocs. v. Midway Ctr. Inc.*, 306 Minn. 352, 356, 237 N.W.2d 76, 78 (1975); *see Bloom v. Hydrotherm, Inc.*, 499 N.W.2d 842, 845 (Minn. App. 1993) (stating that the appellant bears the burden of demonstrating that error is prejudicial), *review denied* (Minn. June 28, 1993). Because we review summary judgment de novo, we review the record anew to determine if appellant has presented sufficient evidence to permit reasonable persons to draw different conclusions. For the reasons outlined below, we conclude that she has not.

## I. Did the district court err in finding that appellant failed to establish a prima facie claim of negligent maintenance against MNDOT?

Appellant made allegations of negligence against both MNDOT and Rushford. The essential elements of a negligence claim are: (1) the existence of a duty of care; (2) a breach of that duty; (3) an injury was sustained; and (4) breach of the duty was the proximate cause of the injury. *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn. 1995). The district court concluded that neither MNDOT nor Rushford owed a duty of care to appellant. The district court reasoned that "[appellant's] injury occurred entirely within [MNDOT's] right-of-way and that [Rushford] had no role in designing, constructing or repairing of the sidewalk or culverts."

Appellant made three separate and distinct claims of negligence: (1) the sidewalk and culverts were negligently maintained; (2) Rushford and MNDOT breached a duty to warn her of hidden and unsafe conditions; and (3) the sidewalk and culverts were negligently designed.

There is no evidence in the record that the sidewalk and culverts were negligently maintained. In her brief, to support this claim, appellant argues that the culvert was a hidden danger because of "tall grass" but cites no facts in the record to support the allegation that there was tall grass. Neither appellant nor appellant's expert testified to the presence of tall grass around the culvert. Furthermore, appellant testified at her deposition that she intended to ride her bike through the grass, rather than make the turn on the sidewalk, indicating that the grass was not maintained too high for biking. There is also no evidence in the record indicating that the sidewalk was crumbling, that there were bumps or potholes that needed attention, or that there was snow on the ground. Because there is no evidence in the record that the sidewalk and culvert were negligently maintained, the district court did not err in dismissing this negligent-maintenance claim on summary judgment.

Additionally, as discussed below, we conclude that because of statutory immunity, vicarious official immunity, and recreational use immunity, as a matter of law, MNDOT and Rushford cannot be found to have breached a duty to warn or to have negligently designed the sidewalk. [3]

## II.     Did the district court err in determining that MNDOT decisions were policy-making decisions, entitling them to statutory immunity?

"Whether government entities and public officials are protected by statutory immunity and official immunity is a legal question which this court reviews de novo."

---

[3] Because we hold that both MNDOT and Rushford are protected by immunity, we decline to reach the issues of whether or not appellant is contributorily negligent or if the claimed design defect was open and obvious in regard to respondents' duty to warn of danger.

9

*Johnson v. State*, 553 N.W.2d 40, 45 (Minn. 1996). Appellant alleges that the district court erred in determining that MNDOT was entitled to statutory immunity. As a general rule,

> [t]he state will pay compensation for injury to or loss of property or personal injury . . . caused by an act or omission of an employee of the state while acting within the scope of office or employment . . . who is acting in good faith . . . under circumstances where the state, if a private person, would be liable to the claimant.

Minn. Stat. § 3.736, subd. 1 (2014). However, the state and its employees are not liable for a loss "caused by the performance or failure to perform a discretionary duty, whether or not the discretion is abused." Minn. Stat. § 3.736, subd. 3(b) (2014). Although "almost every act involves some measure of discretion . . . undoubtedly not every act of government is entitled to discretionary immunity." *Nusbaum v. Cty. of Blue Earth*, 422 N.W.2d 713, 719 (Minn. 1988) (quoting *Cairl v. State*, 323 N.W.2d 20, 23 (Minn. 1982)). Courts draw a distinction between conduct at a planning level, which is protected, and conduct at an operational level which is unprotected. *Id.* Statutory immunity protects governmental actions or decisions of a policy-making nature involving social, political, or economic considerations and does not immunize "professional or scientific" decisions. *Id.* at 722. The burden of proof is upon the state or local governmental unit to establish the application of immunity. *Id.* at 722 n.6.

To begin our discretionary function analysis, we must first identify the precise government conduct being challenged. *See id.* at 722. We identify the precise government conduct being challenged as the decision to not place warning signs and the decision to amend the original E & K design and implement the final as-built changes.

10

A.      Statutory Immunity as Applied to Warning Signs

The placement of warning signs is generally a policy-based, discretionary function entitled to statutory immunity. *Steinke v. City of Andover*, 525 N.W.2d 173, 175-76 (Minn. 1994) ("We have recognized that the government's initial decision, whether to place signs warning the public of potential hazards, is protected as a discretionary function because it involves the consideration of several policy factors."). However "[w]arning of hazards by placing signs is not inherently either discretionary or operational; classification depends on the factors considered in making the decision." *Minder v. Anoka County*, 677 N.W.2d 479, 485 (Minn. App. 2004). "Further, in order for statutory immunity to protect a government's warning sign decision, an actual decision has to have been made in light of a protected policy." *Id.* at 486.

MNDOT states that its policy for projects involving sidewalk construction within its right-of-way is based on "the fact that the affected local unit of government is in the best position to routinely assess the need for such signs, the use of the sidewalk in question, and the type of sign, if any, that would be appropriate." Jeffrey L. Vlaminck, district engineer for MNDOT in the district where the accident occurred, submitted an affidavit stating that this policy is based on the fact that the sidewalk is created for the benefit and at the request of the municipality, the limitations on MNDOT's resources, and the fact that the municipality is able to best gauge its needs. These reasons are policy-based reasons regarding social and economic decisions and thus are entitled to statutory immunity.

For its part, Rushford fails to enumerate a policy for the placement of signs, focusing primarily on the policy regarding maintenance of the sidewalk, giving MNDOT a right-of-

11

way over the sidewalk and culverts. However, Jeff Copley, Rushford public works director at the time the bridge was built, testified that the city made a decision after 2007 because:

> [they] didn't feel that having to put signs up other than the bike trail to designate where that was necessary because there was a city ordinance that had been published in the paper, too, that you couldn't ride on the sidewalks. Periodically they put it even on the website, to tell people you cannot ride on the sidewalks.

This then was a policy-based decision by Rushford to avoid greater spending by only placing signs where bicycle riding was allowed, rather than placing bicycle warning signs everywhere that bicycle riding was not allowed, and could potentially be a danger. Placing warning signs directed at bicycle users may have implied that the sidewalk was excluded from the ordinance prohibiting bicycle riding on sidewalks. These are economic and policy-based reasons for not placing warning signs and this entitles the city of Rushford to statutory immunity from the duty-to-warn negligence claim.

B.      Statutory Immunity as Applied to On-Site Changes

In his affidavit, Mark Anderson stated:

> [W]hen on-site changes are made to plans, it is up to the project engineer, in collaboration with the inspectors on site, to evaluate the nature of the changes, the safety of the proposed changes, the economic feasibility of the changes in light of the amount budgeted for the project and the additional cost of the changes (including labor, materials, and other costs), project aesthetics, what impact the changes will have on timelines for project completion, usability, whether the changes will create additional administrative burdens, whether the changes can be accomplished by on-site planning or whether the proposed changes need to be submitted to either a MNDOT design engineer or a private design engineer, and whether the changes to the project unjustifiably change the general purpose of the project.

12

Appellant counters that MNDOT merely asserts that the plan change was a result of policy considerations typically used in minor construction changes.

If MNDOT employees were "only using [their] professional judgment in implementing [the state's] policy" then those actions are not immune from liability. *Angell v. Hennepin County Regional Rail Authority*, 578 N.W.2d 343, 347-48 (Minn. 1998) ("When the government implements established policy it is generally not immune from liability."). However, the state's policy allows the project engineers in charge of the construction to make on-site changes to the construction plans drafted by E & K. Thomas Parker, the project leader from E & K, testified at his deposition that:

> the only discussion [Parker and the State] had on [long-term thoughts on sidewalk and bicycle usage] was that there was no long-term plan established for the park. It was a future event that would be done by others at a later date, so that's why we brought the sidewalk down into the park and terminated it where we did.

Further, Parker testified at his deposition, "we simply wanted to get a sidewalk from the bridge or the bridge approach down into the park. We didn't know what was going to happen after that." As the project was originally designed, "if you were going to the park on a wheelchair, you would end up on the bottom flat part of a ditch" and you would have to climb the hill of a grassy ditch in order to get to the park. This testimony establishes that it was the intent of MNDOT's policy to allow its engineers to make discretionary on-site changes to the sidewalk and to determine how best to connect the sidewalk from the bridge to the park. At some point "in the future" someone else would complete the sidewalk system and tie it into the trail system.

Although appellant alleges that it is unclear who was responsible for the changes in the sidewalk plans, that it could have been any one of respondents, or that the respondents were working in concert to amend the designs, it is undisputed that MNDOT, and specifically Mark Anderson was responsible for the changes in the sidewalk plans from the E & K originals to the final as-built plan. Because MNDOT's engineers and inspectors would have had to exercise discretion and apply policy considerations concerning the nature of the changes, safety of the changes and economic feasibility, the district court did not err in determining that MNDOT is entitled to statutory immunity.

**III.    Did the district court err in finding that vicarious official immunity bars appellant's claim against MNDOT?**

The grant of vicarious official immunity to a public employer is based on the nature of an employee's immune conduct, whether or not the employee was actually named as a defendant in a lawsuit. *Wiederholt v. City of Minneapolis*, 581 N.W.2d 312, 316-17 (Minn. 1998). The court applies vicarious official immunity when failure to grant it would focus stifling attention on an official's performance to the serious detriment of that performance. *Anderson v. Anoka Hennepin Ind. School Dist. 11*, 678 N.W.2d 651, 664 (Minn. 2004) (quotations omitted). In determining vicarious official immunity, this court must first determine if official immunity applies. *Wiederholt*, 581 N.W.2d at 316-17.

Official immunity is a common-law doctrine which, in the absence of a willful or malicious wrong, protects a public official who is "charged by law with duties which call for the exercise of his judgment or discretion." *Olson v. Ramsey County* 509 N.W.2d 368, 371 (Minn. 1993). "'Discretion' has a broader meaning in the context of official immunity

14

than in the context of statutory immunity." *In re Alexandria Acc. of Feb. 8, 1994*, 561 N.W.2d 543, 548-49 (Minn. App. 1997). Official immunity involves judgment exercised at the operational level rather than the policymaking level, and it requires something more than ministerial duties. *Olson*, 509 N.W.2d at 371. "Duties are ministerial when they are certain and involve merely the execution of a specific duty arising from fixed and designated facts." *Id.* (quotation omitted).

Appellant alleges that MNDOT negligently designed the sidewalk and culvert, failed to warn of the slope, turn, and culvert, and failed to provide barriers to the culvert. The decision to alter the original E & K design involved discretion. The MNDOT engineers had to decide where to turn the sidewalk, whether to increase the cost of the project by building a barrier to the culvert, whether to make the turn at a 90-degree angle or to gradually curve the sidewalk, and whether warnings were necessary or who was in the best position to issue them. These decisions are more than the execution of specific duties arising from fixed and designated facts. As a result, Anderson was entitled to official immunity.

Because Anderson is entitled to official immunity, MNDOT is entitled to vicarious official immunity if the failure to grant vicarious official immunity would focus stifling attention on his performance to the serious detriment of that performance. *Anderson*, 678 N.W.2d at 664. "This standard grants vicarious official immunity in situations where officials' performance would be hindered as a result of the officials second-guessing themselves when making decisions." *Id.* Our concern that project engineers all over the state of Minnesota, making discretionary decisions on a day-to-day basis, would be

15

hindered in making these decisions because of the fear of liability for accidents occurring years later is sufficient to grant vicarious official immunity. For this reason, we conclude that MNDOT is entitled to vicarious official immunity for the discretionary decisions involved in modifying the design of the sidewalk.

**IV.    Did the district court err in finding that appellant did not raise a viable negligence claim against Rushford?**

The district court held that Rushford did not owe a duty to appellant because MNDOT owned the right-of-way for the entire as-built sidewalk and the culverts in question and Rushford did not have a maintenance agreement that would subject it to responsibility for maintaining the sidewalk or culverts. We conclude that the district court erred in its conclusion that there was no maintenance agreement, but because we find that Rushford did not owe appellant a duty of care, we conclude the error was harmless.

Absent an express agreement assuming responsibility for maintaining state-owned property, the city is not liable for negligence in that maintenance. *Huver by Huver v. Opatz*, 392 N.W.2d 237, 240 (Minn. 1986) (citing *Johnson v. City of Thief River Falls*, 282 Minn. 281, 286-87, 164 N.W.2d 71, 74 (1969)). Implicit in that reasoning is the presumption that if the city had expressly contracted with the state to assume the maintenance of the property, the city would also have been held to have assumed any liability for negligence in performing that duty. *Id.* It is undisputed that Rushford entered into an agreement regarding snow removal and lawn maintenance along the sidewalk. It is also undisputed that appellant's injury occurred in the culvert which, on June 24, 2011, was within the state's right of way.

16

Under Minnesota premises liability laws, a possessor of land has a duty to exercise reasonable care for the safety of all persons lawfully entitled to enter the premises. *Peterson v. Balach*, 199 N.W.2d 639, 647 (Minn. 1972). This non-delegable duty requires, "an owner and possessor of land . . . to . . . maintain his property in a reasonably safe condition for visitors on the premises." *Niemann v. Northwestern College*, 81 Minn. 42, 389 N.W.2d 260, 261-62 (Minn. App. 1986). "But even when landowners owe persons a duty to keep and maintain their premises in a reasonably safe condition, they are not insurers of safety." *Rinn v. Minnesota State Agr. Soc.*, 611 N.W.2d 361, 365 (Minn. App. 2000). A person who enters a property also has a duty to exercise reasonable care for his or her own safety. *Louis v. Louis*, 636 N.W.2d 314, 319 (Minn. 2001). When state-owned property is the subject of a negligence suit, courts have held that the local municipality owes a duty only to the extent and terms it has agreed to with the state. *See Johnson*, 282 Minn. at 286, 164 N.W.2d at 74 (holding that, as to a municipal street which is part of the state trunk highway system, a municipality is relieved from responsibilities and duties plainly pertained to the responsibilities for the maintenance of such streets "except only as a municipality is reinvested with such responsibility by voluntarily entering into a maintenance agreement with the state.").

*Petsch v. State*, cited by Rushford, is persuasive. In *Petsch*, the plaintiff left the sidewalk and stood in a grassy area while waiting to cross State Trunk Highway 63 in

Rochester. *Petsch v. State*, 2010 WL 4721328, *1 (Minn. App. Nov. 23, 2010).[4] The plaintiff stepped into a hole near a culvert, fell into the ditch and was injured. *Id.* In the ensuing negligence suit against MNDOT, the city of Rochester, and an adjacent liquor store, this court held that the area over which the plaintiff took her backward steps to the place she fell was entirely within the state's right-of-way. *Id.* at *3. "Because the city agreed to maintain only the sidewalk traversing the state's right-of-way" the city was treated as an abutting landowner, and did not owe any duty beyond the agreed-to maintenance of "the sidewalk itself." *Id.*

Here it is undisputed that appellant's injury occurred in the culvert within MNDOT's right of way. Rushford was not involved in construction, funding, or planning of the sidewalk extension and culverts. Upon completion of the project, MNDOT was solely responsible for determining whether all construction standards were met. MNDOT, not Rushford, was specifically responsible for posting warning signs within its right-of-way and Rushford could not have posted a sign or protective barrier without MNDOT's permission. However, the evidence shows that Rushford had an informal agreement with MNDOT to remove snow and mow along the sidewalk. This agreement does not create a duty of care for Rushford in this case. As we have stated previously, no facts in the record suggest snow or tall grass existed on the sidewalk. Therefore, because the crux of appellant's claim concerns the placement of the culverts, not the quality of the sidewalk

---

[4] We note that unpublished cases are not binding authority, but may be persuasive. *City of St. Paul v. Eldredge*, 788 N.W.2d 522, 526-27 (Minn. App. 2010), *aff'd*, 800 N.W.2d 643 (Minn. 2011).

18

itself, the injuries clearly occurred in MNDOT's right-of-way and Rushford did not owe a duty of care to appellant.

Because the incident did not occur as a result of a dangerous condition in the sidewalk (grass, cracks, snow, potholes, etc.), Rushford did not have a duty to appellant. Appellant's injuries were a result of a hazard entirely within MNDOT's right-of-way.

Additionally, we conclude that appellant has failed to allege any material facts that indicate that Rushford took part in the design of the sidewalk and culvert.[5] Appellant's assertion that Rushford has a duty to safely design a sidewalk on a right-of-way that Rushford does not own based on the 4(f) report indicating that Rushford's policy was to provide safe bicycle and pedestrian access from the bridge to the park is not enough to impose liability against Rushford. The district court did not err in granting summary judgment on the negligent-design claim against Rushford.

**V.      Did the district court err in finding that Rushford was entitled to recreational-use immunity?**

Appellant argues that the district court erred in holding that recreational-use immunity applies to Rushford because, if the state owned the land where she was injured, as the district court held, Rushford cannot claim recreational immunity because the injury had to occur in the park for recreational immunity to apply. Rushford did not have to own the land in order to be protected by the recreational-use immunity. *See Kastner v. Star*

---

[5] Because we hold that Rushford owed no duty to appellant, we decline to reach Rushford's defenses under the public-duty doctrine or Rushford's claims of statutory immunity.

19

*Trails Ass'n*, 646 N.W.2d 235, 238 n.5 (Minn. 2002). That a sidewalk to a park is intended for recreational use is not in dispute.

Minn. Stat. § 466.02 (2014) (the tort liability statute) does not apply to any claim based upon the performance or the failure to exercise or perform a discretionary function or duty including:

> [a]ny claim based upon the construction, operation, or maintenance of any property owned or leased by the municipality that is intended or permitted to be used as a park, as an open area for recreational purposes, or for the provision of recreational services . . . and creation of trails or paths without artificial surfaces, if the claim arises from a loss incurred by a user of park and recreation property or services. Nothing in this subdivision limits the liability of a municipality for conduct that would entitle a trespasser to damages against a private person . . . .

Minn. Stat. § 466.03, subd. 6e (2014). A possessor of land is subject to liability for bodily harm caused to a trespasser by an artificial condition on the land if (1) the condition is one which the possessor has created or maintains and is, to his knowledge, likely to cause death or serious bodily harm to such trespasser, (2) is of such a nature that he has reason to believe that trespassers will not discover it, and (3) the possessor has failed to exercise reasonable care to warn such trespassers of the condition and the risk involved. *Lishinski v. City of Duluth*, 634 N.W.2d 456, 458-59 (Minn. App. 2001), *review denied* (Minn. Jan. 15, 2002).

For purposes of recreational-use immunity, "[w]hether a condition was hidden or concealed depends on the visibility of the condition, not on whether the injured party actually saw the danger." *Id.* at 459. "When a brief inspection would have revealed the

20

condition, it is not concealed." *Johnson v. State*, 478 N.W.2d 769, 773 (Minn. App. 1991), *review denied* (Minn. Feb. 27, 1992).

In this case, had appellant stopped briefly before riding off the sidewalk and into the grass, as she indicated she could have, the dangerous condition would have been revealed. This fact distinguishes the current case from *Lishinski*. In *Lishinski,* an in-line skater fell to her death after skating down a sidewalk that curved sharply, hiding the change in the surface of the path. *Lishinski*, 634 N.W.2d at 457. There, the plaintiff remained on the path, but did not see the change in the surface because the path curved around a stone stage and hid the change of the pavement from blacktop to pavement stone. *Id.* Here, appellant had to leave the path in order to ride into the grass. It is logical that one should not have to stop to check for hidden dangers if one is using the path as it was intended. Appellant's case is more akin to *Watters v. Buckbee Mears Co.*, a case in which the plaintiffs were injured four-wheeling on property on which they were trespassing when they drove over a hill and off an unseen ledge concealed by the hill. 354 N.W.2d 848, 851 (Minn. App. 1984). The court held that, even though the hill that the appellants decided to drive up was not markedly different from the others, an inspection, however brief, would have revealed the ledge on the other side and thus the danger was not concealed. *Id.*

Because appellant intentionally left the path, and because she could have seen the danger had she stopped and looked, the district court did not err in concluding that Rushford was immune from suit under the recreational-use immunity doctrine.

21

**VI.    Did the district court err in concluding that Minnowa was not negligent in the design or construction of the sidewalk?**

The district court did not err in concluding that Minnowa was not negligent in the design or construction of the sidewalk. Appellant argues that the district court erred in "factually finding the alteration was 'designed and decided on by [MNDOT].'" However, appellant points to nothing in the record to contradict Minnowa's testimony indicating that Minnowa had nothing to do with the design aspect of the construction. Appellant points to one page in the deposition transcript where Richard Augustin, a project manager at MNDOT, stated that normally MNDOT and the contractor make decisions collaboratively in the construction phase. This mere assertion is not enough to overcome the evidence indicating that Minnowa was merely doing what it was told, and had no part in the design.

Because appellant cannot point to any evidence that Minnowa had any part in the design of the particular sidewalk and culvert in question, and because appellant's mere assertion that respondents were engaged in a joint enterprise does not to amount to sufficient evidence to create a dispute of material fact, we affirm the district court's dismissal of Minnowa.[6]

---

[6] Appellant, for the first time on appeal, asserts that MNDOT, Minnowa, and Rushford were in a "joint enterprise when they agreed to design, construct, and maintain the sidewalk extension." This court will not consider matters not argued to and considered by the district court. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). Because appellant did not raise the joint-enterprise theory below, this court will not consider the theory here.

22

**VII. Did the district court err in concluding that Kaiser is entitled to summary judgment as a matter of law on its related appeal?**

Minnowa also challenges the district court's grant of summary judgment to Kaiser on its contribution and indemnification claims. Minnowa was the prime contractor for the bridge project and Kaiser was Minnowa's subcontractor, responsible for pouring concrete for the altered sidewalk. We conclude that the district court did not err in concluding that cross-respondent Kaiser is entitled to summary judgment as a matter of law. As Minnowa alleges, contribution and indemnity claims are independent causes of action, but in this case, Kaiser is still entitled to summary judgment.

> Contribution is an equitable doctrine that requires that persons under a common burden share that burden equitably. The essential elements of a contribution claim are (1) common liability of two or more actors to the injured party; and (2) the payment by one of the actors of more than its fair share of that common liability. Whether the right of contribution exists is a legal issue, which we review de novo.

*Nuessmeier Elec., Inc. v. Weiss Mfg. Co.*, 632 N.W.2d 248, 251 (Minn. App. 2001), *review denied* (Minn. Oct. 16, 2001) (citations and quotation omitted). Indemnity applies when, among other situations, "the one seeking indemnity has only a derivative or vicarious liability for damage caused by the one sought to be charged." *Tolbert v. Gerber Industries, Inc.*, 255 N.W.2d 362, 366 (Minn. 1977). Vicarious liability is the imposition of liability on one person for the actionable conduct of another, based solely on the relationship between those two persons. *Sutherland v. Barton*, 570 N.W.2d 1, 5 (Minn. 1997).

Minnowa alleges that the equitable nature of common-law contribution and indemnity actions supports a broad and flexible definition of "common liability" which

23

includes defense costs that accrue as a result of a third-party's meritless claims, and that there was no finding regarding "common liability" between Kaiser and Minnowa determining if appellant's claims were based entirely or partially on Kaiser's work. However, because we conclude the district court did not err in finding that Minnowa was not negligent, a finding of "common liability" is not necessary.

Furthermore, the cases cited to by Minnowa in arguing that it is entitled to contribution and indemnity for the cost of defense are distinguishable.

> If a party is obliged to defend against the act of another, against whom he has a remedy over, *and defends solely and exclusively the act of such other party*, *and is compelled to defend no misfeasance of his own,* he may notify such party of the pendency of the suit and may call upon him to defend it; if he fails to defend, then, *if liable over, he is liable not only for the amount of damages recovered, but for all reasonable and necessary expenses incurred in such defense.*

*Jack Frost, Inc. v. Engineered Bldg. Components Co.*, 304 N.W.2d 346, 352-53 (Minn. 1981) (emphasis added). In *Jack Frost Inc.*, the party that was required to pay defense costs was found to be 15% negligent. *Id.* at 352. Similarly, in *Diebold, Inc. v. Roadway Express, Inc.*, the party who would have been responsible for a share of the defense costs had tender of defense been given was found to be 10% negligent. 538 N.W.2d 150, 151 (Minn. App. 1995). In this case, neither Minnowa nor Kaiser were determined to be even partially negligent and Minnowa was called to defend alleged misfeasance of its own. A partially liable party, who properly tenders defense, might or might not recover an equitable share of the defense costs from another partially liable party, but that is not the case at issue here. No precedent cited by Minnowa stands for the proposition that equitable contribution

24

for defense costs may be recovered when neither party is liable. For this reason, we affirm the district court's grant of summary judgment to Kaiser on the indemnification and contribution claims.

**Affirmed.**